WISCONSIN TITLE SERVICE, INC., Plaintiff-Respondent-
Cross Appellant,†

v.

KIRKLAND & ELLIS, Defendant-Appellant-Cross
Respondent.

Court of Appeals

*No. 91-1205. Submitted on briefs January 10, 1992.—Decided
March 18, 1992.*

(Also reported in 483 N.W.2d 275.)

†Petition to review denied.

On behalf of the defendant-appellant-cross respondent, the cause was submitted on the briefs of *Steven P. Bogart* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent-cross appellant, the cause was submitted on the briefs of *Curtis A. Paulsen* of *Frisch Dudek, Ltd.* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   The issue is whether an attorney is personally liable for paying the premium of a title insur-

ance policy regarding a loan refinancing for a client. The trial court held that *Theuerkauf v. Sutton,* 102 Wis. 2d 176, 306 N.W.2d 651 (1981), the case holding attorneys responsible for the fees of experts hired in aid of litigation, applied to the facts here. We hold that *Theuerkauf* is limited to litigation-related expenditures and therefore reverse the trial court's decision that the attorney is personally liable for the insurer's bill.

The pertinent facts are as follows. On December 7, 1987, Hal Tudor, an attorney with Kirkland & Ellis, wrote to Robert Contrucci of Wisconsin Title Service requesting that a commitment to insure title be prepared for Kirkland & Ellis' client, Glendale Office Partners Limited Partnership (GOP). The commitment was drawn up and sent to Tudor around December 14 and included language to the effect that liability and obligations were imposed upon the issuer. The final policy was to be issued upon Tudor's agreement to the terms expressed in the commitment. The commitment was to expire after six months.

On December 28, Contrucci and Tudor spoke on the telephone, and Tudor expressed concerns about the price. Subsequently, Tudor found another title insurance company for his client, which company issued a title policy in July 1988.

In October 1988, Contrucci contacted Tudor concerning a $6627 invoice. Forgetting that Wisconsin Title was not the title company used, Tudor requested that the policy be issued and stated that the invoice should be paid. Nonetheless, Contrucci informed his staff that the policy should not be issued until the invoice was paid. The invoice was never paid and the policy was never issued.

On January 10, 1989, in response to another invoice, Tudor realized his mistake and informed Wisconsin

Title to cancel his insurance request made in October of 1988. Wisconsin Title sued Kirkland & Ellis for breach of express and implied contracts, and separately alleged unjust enrichment and quasi-contract.

Following a trial to the court, the trial court framed the issue as follows: "Whether attorneys, as agents who regularly engage in the hiring and compensating of outside professionals for their clients, should be responsible for work ordered on behalf of those clients." It then read the *Theuerkauf* decision to say that when an attorney hires an outside professional and is regularly engaged in hiring such professional, there is an implied promise by the attorney to be responsible for paying the professional. The trial court held that *Theuerkauf* applied to this case because Kirkland & Ellis regularly engaged in hiring and compensating title insurance companies. It therefore held that an implied contract existed between Kirkland & Ellis and Wisconsin Title.

Apparently in the alternative, the trial court held that even if there was no implied contract, Kirkland & Ellis should still pay because otherwise it would be unjustly enriched. The trial court seemingly acted in equity by creating a quasi-contract and awarding damages based upon the quasi-contract. It appears that the trial court's damage award was limited to this equitable quasi-contract and not the implied contract that it had earlier found. We say this because the trial court noted that lost profits are not allowed as damages in an unjust enrichment situation. The trial court awarded damages but not the lost profits. Kirkland & Ellis appeals claiming that the law does not require it to be an implied party to an arrangement of this nature and that the trial court's erroneous view of the law was also the reason the court found unjust enrichment. Wisconsin Title cross-appeals, arguing that since the trial court found that an

implied contract existed, damages for lost profits should have been awarded irrespective of the court's unjust enrichment analysis.

The major issue is whether Kirkland & Ellis was liable for Wisconsin Title's invoice, based on the fact that they are attorneys who regularly engage the services of title insurance companies on behalf of their clients and did so in this case. In other words, does their position as attorneys create an exception to the usual principal-agency law such that they are responsible for this bill as a matter of law?

Our answer is "no." We need look no further than *Theuerkauf* to arrive at this outcome. In that sense, we are applying the law to the facts of this case, which is a question of law. *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 141 Wis. 2d 10, 14, 414 N.W.2d 308, 309 (Ct. App. 1987). We owe no deference to the trial court in how we apply *Theuerkauf* to the case here. *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

*Theuerkauf* involved the question of an attorney's personal contractual liability for the cost of professional accounting services requested by the attorney in the preparation of his cases. The attorney in that case engaged an accountant to do tax computations in preparation for three divorce cases. The parties had worked together on similar cases on at least five occasions and the accountant always billed the lawyer directly for his work, even though the attorney never expressly agreed to pay for his services. The attorney claimed that he was the agent for the disclosed principals and therefore was not liable.

Our supreme court began its analysis by recognizing the general principles of principal-agency law. It cited 3 C.J.S. *Agency* § 365 (1973), which we quote as well:

> An agent who contracts on behalf of a disclosed principal and within the scope of his authority, in the absence of an agreement to the contrary, or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, *is not personally liable to the other* contracting party, although he may execute the contract in a manner which would otherwise bind him personally, and he need not expressly negative his liability.

*Theuerkauf,* 102 Wis. 2d at 188 n.8, 306 N.W.2d at 659 (emphasis supplied by the supreme court). The court acknowledged that these rules of agency apply on a general basis to attorney-client relationships. *Id.* at 188, 306 N.W.2d at 659; *see also Ryan v. Department of Taxation,* 242 Wis. 491, 492–96, 8 N.W.2d 393, 394–96 (1943). However, the court decided to depart from this general rule where the attorney hires the services of a third party in aid to litigation. The court wrote:

> [W]hen an attorney engages experts such as but not limited to accountants, economists, engineers, architects and doctors, etc., *to perform services in aid of the conduct of litigation for a named client,* the law will consider the attorney as principal and will imply a promise on the part of the attorney to pay the reasonable cost and expenses of the expert in the absence of an express disclaimer of liability.

*Theuerkauf,* 102 Wis. 2d at 196, 306 N.W.2d at 663 (emphasis added). We emphasize here the supreme court's use of the term "litigation." This was not meant

to be a throw-away word or a word used solely for the sake of example. Rather, the term "litigation" was the keystone of the court's *ratio decidendi* in making its limited departure from general principal-agency law. We arrive at this conclusion based upon the court's extensive quoting from *Judd & Detweiler v. Gittings,* 43 App. D.C. 304, 310 (1915). We repeat the pertinent parts, with emphasis where important:

> The attorney has complete charge of the litigation, is so recognized by the court, and, as such, dominates in all matters pertaining to the conduct of the litigation. . . . The attorney usually determines what steps are to be taken in his client's interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary . . . persons connected, either directly or indirectly, *with the progress of the litigation,* may safely regard themselves as dealing with the attorney, instead of with the client.

*Theuerkauf,* 102 Wis. 2d at 195, 306 N.W.2d at 662-63 (emphasis added). Our supreme court relied upon the *Judd* language in forming the law for Wisconsin. Its rationale is clear. Litigators, not their clients, create and frame the issues for trial. The litigator is therefore not a mere subordinate, important only as a representative of the principal. Rather, the litigator is the person primarily responsible for how the litigation is going to be conducted. As the supreme court stated, the litigator is "in charge" of the litigation. *Id.* at 194, 306 N.W.2d at 662. We here note that we have independently examined the plethora of cases in the United States whereby an attorney was impliedly held to contract with a third person even though the action was taken on behalf of a client. All of those cases involve litigation.

In this case, Tudor did not contact Wisconsin Title "in aid of litigation." There was no litigation. This was a refinancing matter. We take it as a given that most banks and other lenders will require a borrower to purchase title insurance as a condition for executing a loan where real estate is being held as security for that loan. This is often done without the aid of an attorney. While it may bring peace of mind to hire an attorney to do the borrower's necessary work and, in some cases, may even be a wise investment, hiring a lawyer to help with refinancing a loan is not the same as engaging a litigator.[1] We hold that *Theuerkauf* is limited to expenditures in litigation-related matters. It does not apply to this case. Therefore, we reverse the trial court's holding that Kirkland & Ellis was a party to an implied contract as a matter of law because of the *Theuerkauf* case.

---

[1]We also are not blind to the fact that many title insurance companies bill attorneys for their services and that, in some communities, this is a time-honored and accepted practice for both the companies and the attorneys practicing in the community. This case does not mean that the common law on principal-agent relationships would be insufficient to protect a title insurance company in a situation such as that. If there are circumstances suggesting that an attorney has, by his or her conduct, expressly or impliedly intended to incur personal responsibility, common law will support that contract. As earlier pointed out by 3 C.J.S. *Agency* § 365 (1973), certain circumstances may show that a person, normally an agent, expressly or impliedly incurred or intended to incur personal liability. This case simply stands for the proposition that an implied contract cannot be found as a matter of law. We note that Wisconsin Title does not argue that Kirkland & Ellis is responsible under this common-law concept, and the record shows no longstanding, ongoing business relationship between the two parties.

We briefly address the unjust enrichment finding. The trial court found unjust enrichment based upon its belief that "Wisconsin Title conferred a benefit upon Kirkland's client by insuring them throughout the six-month commitment period. Because of the relationship between Kirkland and its client, that benefit was conferred upon Kirkland as well." This ruling appears to be based upon the same reasoning that the trial court used to find an implied contract. For the reasons we have just expressed, this ruling is reversed. While we agree that the commitment was tantamount to insurance for six months and was unpaid, the benefiting party was Kirkland & Ellis' client—GOP. We reverse both the findings of implied contract and quasi-contract based on unjust enrichment and the damages awarded. We dismiss the cross-appeal. We remand with directions that the complaint against Kirkland & Ellis be dismissed.

*By the Court.*—Judgment reversed and cause remanded with directions; cross-appeal dismissed.