Bryan BAUMEISTER, Robin Baumeister, Jeffrey Brown and Stacy Brown, Plaintiffs-Appellants-Petitioners,

HERITAGE MUTUAL INSURANCE COMPANY, Subrogated-Plaintiff,

v.

AUTOMATED PRODUCTS, INC., Defendant,

Edward A. SOLNER AIA d/b/a Solner and Associates, Defendant-Respondent-Petitioner.

Supreme Court

*No. 02–1003. Oral argument September 10, 2004.—Decided December 15, 2004.*

2004 WI 148

(Also reported in 690 N.W.2d 1.)

21

24

For the plaintiffs-appellants-petitioners there were briefs by *Christopher D. Stombaugh, Sheila Stuart Kelley* and *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP,* Platteville, and oral argument by *Christopher D. Stombaugh.*

For the defendant-respondent-petitioner there were briefs by *Anthony R. Varda* and *DeWitt Ross & Stevens, S.C.,* Madison, and oral argument by *Anthony R. Varda.*

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Laywers, and oral argument by *Lynn R. Laufenberg.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on two petitions seeking review of an unpublished decision of the court of appeals, *Baumeister v. Automated Products, Inc.,* No. 02–1003, unpublished slip. op. (Wis. Ct. App. Nov. 20, 2003). The first petition,

filed by Bryan Baumeister, Robin Baumeister, Jeffrey Brown, and Stacy Brown (Baumeister and Brown), requests review of a portion of the court of appeals' decision which affirmed the entry of summary judgment in favor of the defendant, Edward Solner (Solner). Solner filed the second petition and asks this court to overturn the portion of the court of appeals' decision that denied his motion for costs, fees, and reasonable attorney fees.

¶ 2. We affirm the court of appeals and hold that summary judgment was appropriately granted in favor of Solner. We find that there were no genuine issues of material fact presented by Baumeister and Brown to rebut the affidavits presented, and, thus, the prima facie case established, by Solner. We further hold that the court of appeals was correct when it denied Solner's motion for costs, fees, and reasonable attorney fees, pursuant to Wis. Stat. § (Rule) 809.25(3) (2001–02).[1] In

---

[1] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § (Rule) 809.25(3) provides, in relevant part:

(a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees, and reasonable attorney fees under this section. . . .

. . . .

(c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:

(1) The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

(2) The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith

26

order to succeed on this motion, Solner needed to establish that the entire appeal of the order for summary judgment lacked arguable merit. We conclude that Baumeister and Brown's claim that Solner breached his duty of care had arguable merit, and, therefore, cannot be construed as frivolous.

I

¶ 3. On November 12, 1994, Holy Trinity Lutheran Church (Holy Trinity) retained Edward Solner, an architect licensed in Wisconsin, to design its new church. Solner entered into a contract with Holy Trinity pursuant to the Standard Form of Agreement Between Owner and Architect, AIA Document B141 (1987 ed.), which contained the language from Sections 2.6.5[2] and 2.6.6.[3] Holy Trinity had the option to extend

argument for an extension, modification or reversal of existing law.

[2] Section 2.6.5 provides:

The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect in writing to become generally familiar with the progress and quality of the Work completed and to determine in general if the Work is being performed in a manner indicating that the Work when completed will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. (More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)

[3] Section 2.6.6 states in part:

The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's

27

Solner's project responsibilities beyond the services listed in the contract, but chose not to do so.

¶ 4. Holy Trinity hired Roberts Construction Associates, Inc. (Roberts), as the general contractor, pursuant to a Standard Form of Agreement Between Owner and Contractor, AIA Document A101 and 201 (1987 ed.). This contract specified, among other things, that both Roberts and its subcontractors must follow certain requirements related to truss installation: (1) comply with recommendations of TPI (Truss Plate Institute) design specifications for metal plate connected wood trusses and the State of Wisconsin Code requirements; and (2) install materials and systems in accordance with manufacturers' instructions and approved submittals.

¶ 5. Solner completed his plans of the new church and then designed "contract specifications" for the wood trusses to be placed above the main assembly area. Meanwhile, Roberts hired Automated Products, Inc. (Automated) to provide the fabricated wood trusses. An engineer from Automated, Gary Korpela, designed the trusses and their layout to meet the "contract specifications." Automated then shipped the trusses to the construction site and attached instructions: "The Builder shall be responsible for proper truss handling and bracing. A guide for the qualified Builder may be but is not limited to: 'Handling and Erecting Wood Trusses' by TPI, Inc."

---

responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractor's . . . failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

28

¶ 6. Baumeister and Brown were construction workers on the site. They were employed by Diamond Builders, a subcontractor of Roberts. On October 16, 1997, Baumeister and Brown were seriously injured during the erection of the wood trusses. It has been established that the TPI guidelines were not followed during the installation of the trusses.[4]

¶ 7. The insurance company for Holy Trinity, General Casualty Company, subsequently brought a subrogation claim against Diamond Builders in September, 1999. General Casualty sought to recover the cost of the collapsed trusses and the cost for the cleanup, which it had paid to Holy Trinity after the accident. The complaint alleged negligent installation of temporary bracing of the wood trusses.

¶ 8. Baumeister and Brown moved to intervene pursuant to Wis. Stat. § 803.09(1). On August 14, 2000, the circuit court issued an order permitting intervention. Baumeister and Brown then filed a cross-complaint against Solner and the truss manufacturer, Automated. Among other things, they claimed that their injuries were caused by the negligence of Solner. Solner filed a motion for summary judgment on April 16, 2001. The circuit court denied the motion. On November 27, 2001, Solner filed a motion to vacate and a motion for reconsideration. The circuit court heard oral arguments and granted Solner's motion for summary judgment. The Dane County Circuit Court, Judge Richard J. Callaway presiding, determined that Baumeister and Brown had failed to follow the TPI guidelines, and that Solner had no duty to supervise the

---

[4] When construction resumed, the trusses were installed according to TPI recommendations. That installation was without incident.

installation of the trusses at the construction site. As a result, the circuit court ordered that all claims against Solner were dismissed. Solner then filed a motion for attorney fees. He claimed that Baumeister and Brown failed to make an adequate investigation and maintained a frivolous action. The case was appealed before the circuit court ruled on that issue.

¶ 9. The court of appeals unanimously affirmed the circuit court's grant of summary judgment. Judge Lundsten, writing for the majority on that matter, held that Baumeister and Brown were unable to show that Solner's duty of care included supervising personally the construction site, assuring safe construction, or providing safe temporary truss bracing instructions. Moreover, the court of appeals found that Baumeister and Brown would not have been able to satisfy the causation requirement for a claim of negligence, since they, themselves, did not follow the TPI guidelines and, thus, could not show that Solner was negligent in directing that those guidelines be followed. Such alleged negligence could not, therefore, have been a substantial factor in producing their injuries. *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 32.

¶ 10. The issue of the frivolous appeal resulted in a split decision. Judge Deininger wrote a concurrence joined by Judge Vergeront. The majority of the court of appeals concluded that Solner was not entitled to costs, fees, and reasonable attorney fees under Wis. Stat. § (Rule) 809.25(3). It further held that, in order to grant a motion under § (Rule) 809.25(3), the entire appeal must be frivolous, and that not all of the arguments raised on appeal here were completely void of arguable merit.

¶ 11. We first address whether summary judgment was appropriately granted. Although benefiting by the review of the circuit court and the court of appeals, we review an order for summary judgment de novo, applying the same standards as used by those courts. *Conley Publ'g Group v. Journal Communications*, 2003 WI 119, ¶ 13, 265 Wis. 2d 128, 665 N.W.2d 879. We will affirm a grant of summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *City of Elkhorn v. 211 Centralia Corp.*, 2004 WI App 139, ¶ 18, 275 Wis. 2d 584, 685 N.W.2d 874, (citing *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991).

¶ 12. The first step of the methodology is to determine whether the pleadings set forth a claim for relief. *Trinity Evangelical v. Tower Ins. Co.*, 2003 WI 46, ¶ 32, 261 Wis. 2d 333, 661 N.W.2d 789. If a claim for relief is stated, then examination is made of the moving party's affidavits and other proof to determine whether a prima facie case for summary judgment has been established. *Peninsular Carpets, Inc. v. Bradley Homes, Inc.*, 58 Wis. 2d 405, 410–11, 206 N.W.2d 408 (1973). If a moving party has established a prima facie case, the opposing party must then establish that there are disputed material facts, or undisputed material facts from which reasonable alternative inferences could be

drawn, that entitle such a party to a trial. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980).

■

¶ 13. Baumeister and Brown's principal summary judgment argument in opposition to the motion is that there exist genuine issues of material fact concerning Solner's duty. They claim that the circuit court failed to address properly evidence that created a common-law duty based on foreseeability. In making the argument, Baumeister and Brown rely almost exclusively on this court's recent decision in *Alvarado v. Sersch,* 2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350. That case held: "a duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person." *Id.,* ¶ 14 (citation omitted).[5] Baumeister and Brown argue that this principle, applied to the facts of this case, results in a duty that was breached by Solner, because he should have foreseen that the trusses would not have been installed properly. They allege that because Solner gave instructions to the general contractor, Roberts, that workers should follow the guidelines of TPI, but did not give more adequate instructions to the workers, themselves, he should have known that the workers would be in danger. As a result, they contend that the architect breached his duty to provide some form of warning.

---

[5] As repeated by the court of appeals, the test of negligence in Wisconsin requires: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995) (citation omitted).

¶ 14. In support of this position, Baumeister and Brown rely on the affidavits of Professor Kenneth E. Buttry.[6] They offer statements to rebut the affidavits submitted by Solner and another architect, which declare that, under the contracts involved here, Solner did not breach his duty as an architect to design, approve, or inspect the temporary bracing, nor did he breach any duty to investigate or personally supervise truss installation. Specifically, Buttry claims that Solner was responsible for providing truss bracing instructions. He stated in his affidavit: "Given the architect's superior knowledge and skill he should have supplied the contractor and its employees with the required instructions on bracing as noted in the Automated Products Attachments. . . ." He also maintained that the necessary amount of bracing would not be within the common experience of construction workers without guidance from either Solner or Automated.

¶ 15. Baumeister and Brown's next argument is that the court incorrectly ruled on Solner's contractual responsibility to prepare specific bracing instructions. They allege that Automated's instructions clearly stated that the temporary bracing instructions were

---

[6] The court of appeals correctly points out that the circuit court held that two of Buttry's affidavits were untimely under Wis. Stat. § 802.08(2). Because Baumeister and Brown make no argument that the circuit court misused its discretion in disregarding two of the three affidavits, we do not consider them. *Baumeister v. Automated Products, Inc.,* No. 02–1003, unpublished slip op., ¶ 30 n.7 (Wis. Ct. App. Nov. 20, 2003). The court of appeals went on to observe that even if the two late affidavits were considered, those affidavits did not clarify the factual assumptions made by Buttry. *Id.*

33

Solner's responsibility.[7] Baumeister and Brown claim that because Solner did not provide temporary bracing instructions, he is liable for breach of contract. In addition, they claim that because Solner admitted in his affidavit[8] that he did not see the instructions during construction, a breach of his common-law duty is presumed.

¶ 16. Baumeister and Brown also contend, in their briefs, that Solner, personally, had a duty, which was breached, to supervise truss installation. Although their attorney did not rely on this claim during oral arguments,[9] they maintain that Solner was in breach of the Wisconsin Administrative Code. Specifically, Baumeister and Brown attack Solner for ignoring Wis. Admin. Code §§ ILHR 50.07(2)(a) and 50.10 (Sept., 2000). Section ILHR 50.10 states: "All constructions or installations under s. ILHR 50.07(2) and (3) shall be supervised by a Wisconsin registered architect or engineer. . . . The person responsible for supervision shall also be responsible for the construction and installation being in substantial compliance with the approved

---

[7] The directions from Automated read: "Both temporary and permanent bracing are required and their design is the responsibility of the project architect or engineer."

[8] "During the course of litigation, I have seen documents purportedly supplied by Automated Products, Inc. with the trusses suggesting that the building designer have some role in the design of temporary bracing but no such document was never [sic] given to me during the course of construction by Automated Products, Inc., the contractor, the owner, or anybody else involved."

[9] The attorney for Baumeister and Brown stated at oral argument: "We don't believe it was a duty of supervision. This was not necessarily strictly a construction site supervision. This is an anomaly."

plans and specifications." The Code goes on to define "supervision of construction," in Wis. Admin. Code § ILHR 50.10(1), as "reasonable on-the-site observations to determine that the construction is in substantial compliance with approved plans and specifications." Baumeister and Brown argue that Solner's on-site observations were not sufficient, and that an analysis of these obligations under the Administrative Code should be left to the trier-of-fact.

¶ 17. Baumeister and Brown also assert that the issue of causation should also be left for a jury. They buttress this argument with a claimed presumption that in cases where there are inadequate warnings, causation is presumed, relying on *Tanner v. Shoupe,* 228 Wis. 2d 357, 380, 596 N.W.2d 805 (Ct. App. 1999). It should be noted that their argument is not really about inadequate warnings, but about no warnings, and either wrong or inadequate instructions.

¶ 18. We agree with the conclusion of the court of appeals that Solner, in that regard, did not breach his duty to use the standard of care ordinarily exercised by an architect. Baumeister and Brown's reliance on *Alvarado* is misplaced.[10] They assert that Solner's "superior

---

[10] The court of appeals cited affidavits from Solner and architect Lee Madden, and held that Solner did not breach a professional duty to provide safe temporary truss bracing instructions. *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 28. Baumeister and Brown seemed to distance themselves from this argument in their briefs to this court by stating: "This is not an issue of the standard of care of an architect," but there is no question that their pleadings, their briefs, and Buttry's affidavit submitted to the circuit court in opposition to summary judgment, all raise the claim of a breach of Solner's professional duties as an architect.

knowledge" created a duty to provide adequate instructions to them, because the omission of such instructions resulted in an unreasonable risk of injury or damage to the workers. The court of appeals rejected this argument. It stated that "superior knowledge alone does not create liability." *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 23.

¶ 19. Although Baumeister and Brown alleged that an architect who designs or specifies a building component has a professional duty, which was breached, to ensure that safe installation instructions for that particular component are provided, the court of appeals noted that they presented no expert testimony in support of that allegation. *Id.* In his affidavit, Buttry did not assert directly, or through a recitation of his qualifications, that he was qualified to give an opinion as an expert on the professional responsibility of an architect.

¶ 20. Solner asserted in his affidavit that, in the usual situation, the contractor would hire a truss manufacturer to provide necessary trusses and its engineer would assure that the trusses met the design specifications.[11] In his professional opinion as an architect, Solner stated that he "had a right to reasonably rely upon the professional certification of Mr. Korpela as to the structural accuracy of the trusses he had designed and [he] had no obligation to redesign those trusses or inspect and verify the trusses, as built, to determine if they complied with his design." Based on

---

[11] In his affidavit, Solner stated: "In the usual and customary fashion followed in the State of Wisconsin, the building contractor hires a truss manufacturer to provide trusses, and the truss manufacturer's engineer engineers those trusses to fit the design and meet the design specifications for the load, pitch, slope, etc."

what was presented, we agree with the court of appeals that Solner had no reason to foresee any installation problems.

¶ 21. Solner also had no contractual duty, which was breached, in regard to the installation of the truss bracing. An inspection of the contract and review of the truss manufacturer's instructions demonstrate that Baumeister and Brown's argument is flawed. Under the terms of the AIA contract, Solner is relieved of liability with regards to "construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work." AIA Section 2.6.6. Architect Lee Madden confirmed this in his affidavit. He stated: "Under AIA contracts, the architect is not responsible for, nor does he control, the methodology and techniques chosen by the contractor to construction [sic] a building, including the use of temporary bracing while erecting trusses."

¶ 22. As for the argument that Automated's instructions bind Solner, since the instructions read, "both temporary and permanent bracing are required and their design is the responsibility of the project architect or engineer," the court of appeals disposed of it convincingly:

> First, nothing in the truss manufacturer's instructions "explicitly" states that "Solner" is responsible.
>
> Second, Baumeister and Brown do not even attempt to explain why a directive from the truss manufacturer could impose a contractual duty on the building architect.
>
> Third, the manufacturer's instructions do not say that the architect of the building is responsible for

providing temporary truss bracing · instructions. Rather, the manufacturer's instructions read: "both temporary and permanent bracing are required and their design is the responsibility of the project architect or engineer." Baumeister and Brown do not provide any basis on which to conclude that Solner was the "project architect" within the meaning of the manufacturer's instructions. Certainly Solner was the architect who designed the church, but does that make him the "project architect" within the meaning of the instructions? Baumeister and Brown provide no answer.

Fourth, the manufacturer's instructions put responsibility on the "project architect or engineer." Baumeister and Brown do not explain why, with respect to this particular project, it is the project architect and not the project engineer who was responsible.

*Baumeister*, No. 02–1003, unpublished slip op., ¶¶ 15–18. The holding of the court of appeals is consistent with our decision in *Vonasek v. Hirsch and Stevens, Inc.*, 65 Wis. 2d 1, 221 N.W.2d 815 (1974). In that case, a general contractor brought a claim against an architect to recover for damages from a building that collapsed. The contractor alleged that the architect had supplied defective plans and specifications, and that his supervision of the project was inadequate. We concluded that the architect's contract with the owner did not require the architect to specify procedures or to supervise the work of the contractor.[12] "To hold otherwise would make the architect a general safety super-

---

[12] Vonasek's Owner-Architect contract provided in relevant part:

"3.4.3 [The Architect] will make periodic visits to the site to familiarize himself generally with the progress and quality of the work and to determine in general if the work is proceeding in accordance with the Contract Documents. He will not be required to make exhaustive or continuous on-site inspections to check the

visor at the site, a job which would require his continuous presence in disregard of the express language of his contract." *Id.* at 11–12.

¶ 23. Baumeister and Brown also failed to demonstrate that there was a breach of a duty by Solner, personally, to supervise the construction site. The duty listed in the Wisconsin Administrative Code ensures that the construction complies with the approved plans and specifications. Wis. Admin. Code § ILHR 50.10. Solner acknowledged this duty in his affidavit: "Under the Wisconsin Administrative Code, I would have been responsible to inspect the final bracing and connections of wood trusses to make sure they were properly made in conformance with the code." Solner argues that this responsibility to inspect and approve the building was not required until the building was completed. Baumeister and Brown do not present any basis for their alternate interpretation of this code section.

¶ 24. The court of appeals also acknowledged that Baumeister and Brown "have a causation problem" in regard to the assertion that Solner was negligent when he required that the TPI instructions be followed. *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 32. In Wisconsin, the test for causation is whether the conduct at issue was a "substantial factor" in producing plaintiff's injury. *Estate of Cavanaugh v. Andrade,* 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996). Here,

---

quality or quantity of the work and he will not be responsible for the Contractors' failure to carry out the construction work in accordance with Contract Documents."

*Vonasek v. Hirsch and Stevens, Inc.,* 65 Wis. 2d 1, 11, 221 N.W.2d 815 (1974) (emphasis omitted).

Baumeister and Brown present nothing to support the claim that Solner's actions concerning the TPI bracing instructions played a role in creating their injuries. In commenting on the fact that the instructions from Solner to the contractor, Roberts, directed that TPI guidelines be followed, while not providing correct or more adequate instructions to the workers or their employer, the court of appeals noted: "Since Baumeister and Brown did not follow the Truss Plate Institute guidelines, they cannot show that a directive that the guidelines be followed was a substantial factor in producing their injuries." *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 32. Considering the test for the granting of a summary judgment motion, the affidavits and attachments presented, and the arguments of counsel, we conclude that Solner established an unrebutted prima facie case that there were no genuine issues of material fact, and, therefore, that the granting of the motion was appropriate.

### III

¶ 25. We next address Solner's motion to declare the appeal frivolous, in accordance with Wis. Stat. § (Rule) 809.25(3). When, as here, the facts have been established, we review a claim of frivolousness de novo. *Tennyson v. Sch. Dist. of Menomonie Area,* 232 Wis. 2d 267, 288, 606 N.W.2d 594 (Ct. App. 1999); *see also Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994). In order to impose sanctions, the court must find that "[t]he party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of

existing law." Wis. Stat. § (Rule) 809.25(3)(c)2. Consequently, when a motion is made to declare an appeal frivolous, we will resolve all doubt in favor of finding the claim nonfrivolous. *In re Estate of Bilsie,* 100 Wis. 2d 342, 350, 302 N.W.2d 508 (Ct. App. 1981).

¶ 26. Frivolous action claims and frivolous appeals present a serious cause for concern. We have found this to be "an especially delicate area since it is here that ingenuity, foresightedness and competency of the bar must be encouraged and not stifled." *Radlein v. Indus. Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984). Thus, in Wisconsin, the court of appeals has not assessed costs, fees, and reasonable attorney fees under Wis. Stat. § (Rule) 809.25(3), unless the entire appeal is frivolous. A frivolous argument in a brief is not enough to find the appeal frivolous. *In re Carpenter v. Mumaw,* 230 Wis. 2d 384, 398, 602 N.W.2d 536 (Ct. App. 1999). This interpretation by the court is consistent with the following decisions: *Manor Enterprises v. Vivid, Inc.,* 228 Wis. 2d 382, 403, 596 N.W.2d 828 (Ct. App. 1999) ("we may not award fees under § 809.25(3)(a), Stats., unless the entire appeal is frivolous."); *Tennyson,* 232 Wis. 2d at 290. (" '[W]e may not award fees under § 809.25(3)(a), Stats., unless the entire appeal is frivolous.' " (citations omitted) (emphasis omitted)); *Chase Lumber & Fuel Co. v. Chase,* 228 Wis. 2d 179, 210 n.12, 596 N.W.2d 840 (Ct. App. 1999) ("We note that Rule 809.25(3), Stats., does not allow us to find that individual arguments in a brief are frivolous." (citation omitted)); *Nichols v. Bennett,* 190 Wis. 2d 360, 365 n.2, 526 N.W.2d 831 (Ct. App. 1994) ("Rule 809.25(3) Stats., does not allow us to find that individual arguments in a brief are frivolous."). We uphold this approach, since the court of appeals has applied

41

§ (Rule) 809.25(3) correctly. The statute specifically authorizes sanctions only upon a determination that the "appeal or cross-appeal" was frivolous. There is nothing in the language of § (Rule) 809.25(3) that allows a court to determine that an appeal is frivolous, merely because an individual claim or defense is frivolous, and nothing has persuaded us to apply the statute in such a manner.

¶ 27. Solner argues that this interpretation of the frivolous appeals statute will lead to illogical results. He contends that because causation is a determinative factor in a negligence analysis, if causation cannot be established, that the entire appeal should be found to be frivolous. This argument is flawed. We need to find each of their arguments frivolous, under Wis. Stat. § (Rule) 809.25(3)(a),[13] in order to find the entire appeal frivolous. *Tennyson,* 232 Wis. 2d at 290. The causation issue that Solner alleges to be frivolous is one element of Baumeister and Brown's negligence claim against him and concerns his requirement that the TPI bracing instructions be followed.

¶ 28. The court of appeals' majority was correct in determining that not all of the arguments made by Baumeister and Brown were lacking in arguable merit. Legitimate issues were raised concerning whether Solner breached his duty of care as an architect. Although

---

[13] Even though Wis. Stat. § (Rule) 809.25(3) was cited in relevant part at footnote 1, it is important to emphasize here that subsection (a) explicitly requires that either the "appeal or cross-appeal" be frivolous. There is no mention of individual elements or arguments. Subsection (a) states, in relevant part: "If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees, and reasonable attorney fees under this subsection."

the argument was unsuccessful, we do not find it to have been frivolous. *See Stern,* 185 Wis. 2d at 235. This court does not look at "whether one can prevail on his claim, but whether the claim is so indefensible that the party or his attorney should have known it to be frivolous." *Juneau County v. Courthouse Employees,* 216 Wis. 2d 284, 295–96, 576 N.W.2d 565 (1997) (citation omitted). In analyzing frivolous action claims under Wis. Stat. § 814.025, doubts should be resolved in favor of finding a claim nonfrivolous, unless the claim was brought solely for purposes such as harassment or malicious injury, or without any reasonable basis in law or equity. The same basic approach should be applied where there is a claim of a frivolous appeal under Wis. Stat. § (Rule) 809.25(3).

¶ 29. Judge Lundsten concluded in his dissent that Baumeister and Brown should have been sanctioned for filing a frivolous appeal. He agreed that under Wis. Stat. § (Rule) 809.25(3), the appellate court would have to conclude that the entire appeal was frivolous in order to impose costs, fees, and reasonable attorneys fees, but he determined that this was such a case. He concluded the entire appeal was frivolous, since a reasonable attorney would have known that an appeal based on the Buttry affidavits would be without merit. Moreover, he asserted that Baumeister and Brown presented nothing new on appeal to demonstrate the existence of a genuine issue of material fact. *Baumeister,* No. 02–1003, unpublished slip. op., ¶ 35.

¶ 30. We conclude, as did the court of appeals' majority, that it was not frivolous for Baumeister and Brown's attorney to rely on Buttry's affidavit concerning Solner's duty of care related to truss bracing. As stated above, the Buttry affidavit raises an issue as to

43

whether Solner breached the duty of care that he owed to Baumeister and Brown. Professor Buttry stated: "it is the responsibility of the building designer, Mr. Solner, to detail the truss/wall connection." He also stated that the workers should have been warned, because of the unusual design specifications. We are satisfied that a reasonable attorney could find this to be a basis for an appeal, one that is not frivolous under all the circumstances.

¶ 31. Lastly, we decline, as urged by Solner, to overrule the court of appeals' holding in *Leske v. Leske,* 185 Wis. 2d 628, 517 N.W.2d 538 (Ct. App. 1994). In *Leske,* the defendant counterclaimed for costs and attorney fees under Wis. Stat. § 814.025, after the circuit court granted him partial summary judgment. The court of appeals reviewed the summary judgment ruling while the counterclaim under § 814.025 was still pending in the circuit court. The court of appeals concluded that "the pendency of a claim for attorney's fees under a specific fee-shifting statute does not render a judgment or order nonfinal, provided that the judgment or order disposes of all of the substantive causes of action between the parties." *Id.* at 633; *see also Harder v. Pfitzinger,* 2004 WI 102, 274 Wis. 2d 324, 682 N.W.2d 398. Solner argues that appeals should never be accepted until the circuit court has determined whether to assess costs and reasonable attorney fees. Specifically, he contends that this rule both deprives an appellate court of the circuit court's decision on frivolousness, and results in multiple appeals.

¶ 32. We encourage a party alleging a frivolous claim to move the appellate court to stay the appeal, and retain jurisdiction while the case is remanded for a circuit court ruling on the frivolousness issue. If a party chooses to appeal the circuit court's frivolousness rul-

44

ing, the appellate court can then combine the initial appeal on the merits with the appeal of the decision of the circuit court on frivolousness.[14]

### IV

¶ 33. In sum, we conclude that the summary judgment motion of Solner was properly granted. There were no genuine issues of material fact presented by Baumeister and Brown to rebut the affidavits and attachments filed, and, thus, the prima facie case established, on behalf of Solner, that supported Solner's position that Solner breached no duty of care.

¶ 34. We also conclude that Baumeister and Brown's appeal was not frivolous under Wis. Stat. § (Rule) 809.25(3). In order to be awarded costs, fees, and reasonable attorney fees, the moving party must prove that the entire appeal presented was frivolous. If an argument advanced has arguable merit, then the appeal is not frivolous. In this case, Baumeister and Brown presented a meritorious argument concerning whether there was a breach of Solner's duty of care. While finding that this argument was not frivolous under § (Rule) 809.25(3), and that, therefore, the entire appeal was not frivolous, we wish to emphasize that it is important to preserve the opportunity for attorneys to represent the interests of their clients zealously, so that there might be good faith development of the law. *Stern*, 185 Wis. 2d at 235.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 35. JON P. WILCOX, J., did not participate.

---

[14] The case was taken to the court of appeals before the circuit court ruled on Solner's motion for a frivolous claim, pursuant to Wis. Stat. § 802.05.

45

¶ 36. LOUIS B. BUTLER, JR., J. (*concurring*). I join the decision and mandate of the court. While I would prefer a rule that would require claims for attorney's fees to be disposed of before a judgment or order becomes final, this court's decision today is consistent with its ruling last term in *Harder v. Pfitzinger*, 2004 WI 102, 274 Wis. 2d 324, 682 N.W.2d 398. Moreover, the court provides a framework that would allow the parties to litigate frivolous claims and then consolidate the appeals. Majority op., ¶ 31. I see no reason to abandon the precedent established in *Leske v. Leske*, 185 Wis. 2d 628, 517 N.W.2d 538 (Ct. App. 1994) and *Harder* at this time. *See Johnson Controls, Inc. v. Employers Ins.*, 2003 WI 108, ¶¶ 98–99, 264 Wis. 2d 60, 665 N.W.2d 257. I therefore concur.