DUGAN, J.[1]
¶ 1 Hydro Well Drilling LLC appeals the circuit court's order denying its damages claim and dismissing its action against Basil Ryan, III ("Ryan III") and Jennifer Ryan (collectively the "Ryans"); Basil Ryan, II ("Ryan II"); and Ryan Management LLC (collectively the "Ryan Defendants"). This matter arises from work done in November 2016 on a property owned by the Ryans. Subsequently, Hydro Well filed a small claims action against the Ryan Defendants seeking damages. The matter was tried to the court.
¶ 2 On appeal, Hydro Well contends that the trial court erred because it found that (1) Hydro Well had no right to recover any damages from any Ryan Defendant; (2) there was no implied contract between it and any Ryan Defendant, and (3) Hydro Well had not established damages for unjust enrichment.
¶ 3 We conclude that the trial court properly found that Hydro Well failed to prove that it had any right to recover any damages from any of the Ryan Defendants, failed to prove that there was an implied contract between it and any of the Ryan Defendants, and failed to prove that it was entitled to recover damages for unjust enrichment. Furthermore, we conclude that the trial court properly found that, even if Hydro Well had proven that it was entitled to recover damages for unjust enrichment, it failed to prove the value of any benefit that was conferred upon the Ryans. We also deny the Ryan Defendants' motion for sanctions on appeal.
¶ 4 The following background facts are taken from the trial court's decision and supplemented by the record. Additional relevant facts are included in the discussion.
BACKGROUND
¶ 5 Ryan II and Burgarino have known each other for thirty years. During that time, the two men "traded" work, without paying each other for the work. The two men "basically just did favors for each other over the years." Ryan II and Burgarino arranged crews for the work that they did for each other and those crews were never compensated. Over the years that Ryan II and Burgarino worked together, they never had a written agreement or memorandum.
¶ 6 In November 2016, Burgarino did work on an existing well at the subject property, which involved removing an old pump, and installing a new pump, lateral, tank, and fittings. He did the work pursuant to informal conversations he had with Ryan II. There was no written agreement. There was no agreement to compensate Burgarino with any money. Ryan II did not think that he would be paying Burgarino for what he was doing. There was no agreement that included Ryan III. Hydro Well never came up in the discussions.
¶ 7 Burgarino purchased some materials for the work and paid for them from Hydro Well's account. Burgarino also paid Timothy Schmidt a $600 fee, for renting the machine that was used to dig a trench on the property, from Hydro Well's account. Burgarino also used some materials that he had on his truck. Burgarino was not reimbursed for any of those items. Ryan II set up the crew for the job on the property.
¶ 8 On November 10, 2016, Burgarino removed the old pump from the well, and on November 11, 2016, he installed the new pump, pump cable, and other parts. He also installed a tank in the barn and dug part of a trench for the lateral pump pipe. Schmidt helped Burgarino dig the trench. Burgarino also provided a new adapter on November 11, 2016, which he purchased using Hydro Well's account, but he never installed the adapter.
¶ 9 According to Ryan II, he "fired" Burgarino on November 11, 2016, because the newly installed tank was leaking, the trench was open, and he was getting frustrated that Burgarino was going on vacation. The next day, Ryan II had a temporary tank installed, and eventually the well system was redone. The following week, Burgarino telephoned Ryan II to discuss "squaring up." Ryan II told Burgarino that they had to "duplicate everything," that he was not paying him, and that he could come and pick up all the materials that he had used on the property, including the plastic piping, the pump, the wiring, the copper, and the fittings. Ryan II also never used the adapter that Burgarino had provided. However, the trench that Burgarino and/or Schmidt dug was not redone.
¶ 10 Eventually, Burgarino delivered a bill from Hydro Well in the amount of $3950 to Ryan III, and Ryan III gave the bill to Ryan II. Ultimately, when Hydro Well did not receive payment, it gave the Ryans notice of intent to file a claim for a construction lien, and in February 2017, Hydro Well filed the underlying small claims action.
¶ 11 Following a bench trial, the trial court held that there was no contract, express or implied, between Hydro Well and any of the Ryan Defendants. It concluded that the parties "played sort of fast and easy with corporate entities and when they were working as individuals."
¶ 12 The trial court also held that there would be a claim for unjust enrichment because at least some benefit was conferred upon the Ryans based on the fact that a trench was dug by Burgarino and/or Schmidt. The trial court also noted that Burgarino paid $600 to Schmidt, so at least some money was owed to someone by Ryan III. However, the trial court found that "the testimony was also unclear as to what the precise dollar amount was of that benefit[.]" The trial court stated that the value of the benefit had not been established because the testimony focused on a theory that there was an existing contract or an implied contract and the testimony did not address any benefits to the Ryans under an unjust enrichment claim.
¶ 13 The trial court also stated that the testimony suggested that the party that should actually receive something was "probably" Burgarino or Schmidt and that it had considered offering Hydro Well the opportunity to amend its complaint to substitute Burgarino as the plaintiff. However, it held that even if that was done, the precise dollar value of any benefit conferred had not been proven. Therefore, it held that no one was entitled to any damages. The trial court then dismissed the action. This appeal followed.
DISCUSSION
¶ 14 On review of a factual determination made by a trial court without a jury, we will not reverse unless the finding is clearly erroneous. See WIS. STAT. § 805.17(2). In addition, "when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses." Cogswell v. Robertshaw Controls Co. , 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). "When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." See id. However, the application of the law to the facts of this case is a question of law that we determine without deference to the trial court's determination. See Wisconsin Title Serv., Inc. v. Kirkland & Ellis , 168 Wis. 2d 218, 222, 483 N.W.2d 275 (Ct. App. 1992).
The Trial Court Properly Found that Hydro Well Failed to Prove It Was Entitled to Recover Any Damages
¶ 15 Hydro Well argues that the trial court erred in concluding that it had no right to recover, because as a limited liability company, it is entitled to the same rights and remedies as a natural person. It states that "unless there is some demonstrated fraudulent purposes or some strong equitable claim the corporate entity has a separate existence and the right to be treated as a party separate from its owner," relying on Milwaukee Toy Co. v. Industrial Commission , 203 Wis. 493, 405-06, 234 N.W. 748 (1931).
¶ 16 However, the trial court's ruling does not suggest any disagreement with the principle Hydro Well asserts. Rather, Hydro Well's case was dismissed because the trial court determined that it failed to present sufficient credible evidence that it entered into any agreement (express or implied) with any of the Ryan Defendants or that it conferred any benefit upon any of the Ryan Defendants that could provide a basis for recovery. As will be further discussed, we uphold those findings because they are supported by the record and consistent with the applicable case law.
The Trial Court Properly Found that Hydro Well Failed to Prove that an Implied Contract Existed
¶ 17 Hydro Well asserts that it proved that an implied contract existed, citing Wojahn v. National Union Bank , 144 Wis. 646, 667, 129 N.W. 1068 (1911). We are not persuaded by Hydro Well's citation to Wojahn . We conclude that WISCONSIN JI-CIVIL 3024 describes the requisite elements of an implied contract applicable to this case:
An agreement may be established by the conduct of the parties without any words being expressed in writing or orally, if from such conduct it can fairly be inferred that the parties mutually intended to agree on all the terms. This type of agreement is known as an implied contract. An implied contract may rest partially on words expressed in connection with conduct or solely upon conduct.
¶ 18 Here, the trial court considered the evidence and found that Hydro Well was not a party to any agreement. The difficulty with Hydro Well's claims in this case is that Burgarino did business as an individual and through Hydro Well. The trial court found the parties "played sort of fast and easy with corporate entities and when they were working as individuals." The evidence in the record supports that finding and its finding that Hydro Well was not a party to any implied contract. Further, it also supports the trial court's finding that work at the subject property was performed according to an informal arrangement between Ryan II and Burgarino, consistent with their past practices, and that Ryan II and Burgarino had a course of dealing in which they did work for each other as individuals, without any monetary compensation.
¶ 19 The only discussions of the work to be done at the property were between Ryan II and Burgarino. Ryan II believed that he was dealing with his long-time friend, Burgarino, with whom he had always worked directly. Ryan II testified that Burgarino had done work on wells located on his properties and at his home. In exchange for that work, Ryan II had hauled equipment for Burgarino, loaned him tools, and sometimes assisted him on jobs. Ryan II knew about Hydro Well for thirty years, but never worked with the company. He always worked directly with Burgarino, and never received an invoice from Hydro Well. For example, during the summer of 2007, Ryan II worked with Burgarino redoing all the wells on properties owed by Ryan Management, a company through which Ryan II and Ryan III own and manage properties. Ryan Management paid the vendors directly for the parts and Burgarino did the work.
¶ 20 The record also establishes that Ryan II believed that Hydro Well did not exist in 2016. In 2007, Burgarino told Ryan II that he was getting out of the well business. Ryan II also knew that in 2013, Burgarino sold the business's building.
¶ 21 For an implied contact to exist, there must be a meeting of the minds. See Wojahn , 144 Wis. at 667 ; Theuerkauf v. Sutton , 102 Wis. 2d 176, 185, 306 N.W.2d 651 (1981). In finding that there was no implied contract, the trial court, the ultimate arbiter of the credibility of witnesses, believed Ryan II's testimony about the course of dealing between the parties, and that he only dealt with Burgarino as an individual. See Theuerkauf , 102 Wis. 2d at 185. The trial court's conclusion that there was no implied contract is supported by the record and is consistent with the law of implied contracts. Thus, we uphold the trial court's finding that Hydro Well did not establish that an implied contract existed between it and any of the Ryan Defendants.
The Trial Court Properly Found that Hydro Well Failed to Prove that It Was Entitled to Recover Damages for Unjust Enrichment
¶ 22 Hydro Well asserts that, based on the trial court's finding that the Ryans owe something to someone, it should have awarded damages to Hydro Well.
¶ 23 In order to recover for unjust enrichment, a plaintiff must establish three elements: (1) a benefit was conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of that benefit; and (3) it is inequitable for the defendant to accept or retain that benefit without payment of the value. Puttkammer v. Minth , 83 Wis. 2d 686, 689, 266 N.W.2d 361 (1978). "It is not enough to establish that a benefit was conferred and retained; the retention must be inequitable." Id. at 690. The measure of damages for unjust enrichment is limited to the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant. See Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co. , 206 Wis. 2d 158, 188-89, 557 N.W.2d 67 (1996). In an action for unjust enrichment, no contract is implied. Ramsey v. Ellis , 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992).
¶ 24 "Unjust enrichment is an equitable doctrine, and the trial court's decision to grant or deny a remedy is reviewed for erroneous exercise of discretion." Ludyjan v. Continental Cas. Co. , 2008 WI App 41, ¶ 6, 308 Wis. 2d 398, 747 N.W.2d 745. "Discretionary decisions are sustained if the circuit court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable judge could reach." Id.
¶ 25 Here, the trial court stated that there was no question that a benefit, to some degree, was conferred upon the Ryans. It held there would be a claim for unjust enrichment, but the question was for what and who was entitled to the payment. It went on to state that the testimony would suggest that the party entitled to receive "something" was probably Burgarino and/or Schmidt, not Hydro Well. Moreover, although the trial court stated that the testimony suggested that Burgarino and/or Schmidt were the party entitled to receive "something," it never made such a finding. Rather, as discussed below, the trial court held that it did not matter who might be entitled to recover under a theory of unjust enrichment, given the fact that the evidence introduced was insufficient to prove what benefits the Ryans received and the value of any benefit.
¶ 26 We conclude that the record supports the trial court's finding that the evidence introduced at trial was insufficient to prove what benefit was conferred upon the Ryans. When it comes to measuring damages, "damages in an unjust enrichment claim are measured by the benefit conferred upon the defendant, while damages in a quantum meruit [implied contract] claim are measured by the reasonable value of the plaintiff's services." Ramsey , 168 Wis. 2d at 785 (italics added). In this case, the trial court found that it did not have sufficient evidence to establish what benefit was conferred on the Ryans from the work done on their property. It also found that the precise dollar amount of any benefit conferred was unclear. The record supports the trial court's finding. The evidence that Hydro Well presented at trial was based on the value of the services as reflected by Hydro Well's bill. Hydro Well does not cite to any evidence in the record indicating what benefit was conferred upon the Ryans or the value of any such benefit.
¶ 27 Our review of the record establishes that the trial court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable judge could reach. See Ludyjan , 308 Wis. 2d 398, ¶ 6. We conclude that Hydro Well has not shown that the trial court's findings are clearly erroneous. Therefore, we affirm the trial court's order.
The Appeal Is Not Frivolous
¶ 28 The Ryan Defendants seek costs, fees, and attorney fees as a sanction, asserting that this appeal is frivolous under WIS. STAT. RULE 809.25(3)(c). The test is whether "under all the circumstances," the appeal is "so indefensible that the party or his attorney should have known it to be frivolous." Baumeister v. Automated Prods., Inc. , 2004 WI 148, ¶¶ 28, 30, 277 Wis. 2d 21, 690 N.W.2d 1 (citation omitted). "In order to be awarded costs, fees, and reasonable attorney fees, the moving party must prove that the entire appeal presented was frivolous. If an argument advanced has arguable merit, then the appeal is not frivolous." See id. , ¶ 34. Although Hydro Well has not prevailed on appeal, we are not persuaded that its arguments on appeal are frivolous. See id. , ¶ 27. Therefore, the motion for sanctions is denied.
CONCLUSION
¶ 29 For the foregoing reasons, we affirm the trial court's order dismissing Hydro Well's action.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)(4).

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.