Harry T. STAVER, Plaintiff-Appellant,

v.

MILWAUKEE COUNTY, a Wisconsin County,
Defendant-Respondent,

PENSION BOARD, MILWAUKEE COUNTY
EMPLOYEES' RETIREMENT SYSTEM,
Defendant.

Court of Appeals

*No. 2004AP2245. Submitted on briefs December 27, 2005.
—Decided February 7, 2006.*

2006 WI App 33

(Also reported in 712 N.W.2d 387.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *O'Neil, Cannon, Hollman, DeJong, S.C.* by *Russell C. Brannen, Jr.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William J. Domina*, corporation counsel by *Mark A. Grady*, principal assistant corporation counsel of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J.    Harry T. Staver appeals from a summary judgment granted in favor of Milwaukee County. Staver claims:    (1) the trial court should have struck the County's trial court summary judgment

brief because it did not contain record references or citations to legal authority; (2) he is entitled, as a matter of law, to interest on the retroactive pension payment he received; (3) he is entitled, as a matter of law, to a lump-sum refund payment, plus interest, for the health insurance premiums he paid from the time of his retirement until the time it was determined that he was to receive free health insurance; and (4) his action is not barred by the statute of limitations. Because Staver fails to provide any authority for his first claim; because he is not entitled to interest on the pension payment; and because he is not entitled to a lump-sum refund or interest on the health insurance premiums he paid, we affirm.[1]

## BACKGROUND

¶ 2.   On August 1, 1975, Staver was hired by the County as a Neighborhood Security Aide. This position was funded under a federal government grant known as CETA.[2] On October 1, 1979, he received an emergency appointment to a position in the county civil service system. On February 12, 1980, Staver was given a regular appointment to a position in the county civil service system. This new position was regular county employment and not subject to CETA funding for its continuance, and made Staver eligible to become a member of the Milwaukee County Employees' Retirement System (ERS). At this point, he began to earn pension service credit.

---

[1] Based on our disposition, it is not necessary for us to reach the statute of limitations issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

[2] CETA is the acronym for the Comprehensive Employment and Training Act of 1974.

¶ 3.    Staver continued to be employed in a county position as he approached his sixty-fifth birthday in 1990. As of December 1, 1990, Staver had accumulated 10.8 years of pension service credit for employment with the County. He also knew that he was entitled to two years of military service credit for his pension eligibility. Sometime before he turned sixty-five years old, he learned of "early retirement service credits" to encourage retirement. Specifically, the County offered three full years of credit to Staver if he retired early. Together, these three numbers would give him fifteen years of pension service credit.

¶ 4.    On September 25, 1990, Staver signed his retirement papers. He was then informed by human resources that his "service credits" did not equal fifteen years for the purpose of health insurance, and so he was not entitled to free health insurance. Rather, he would have to pay a monthly premium to maintain his health insurance. The reason for this was that the two-year military credit did not apply to the health insurance credit calculation. In addition, the time he spent as a CETA-funded employee did not count toward pension service credit or health insurance service credit.

¶ 5.    On November 17, 1999, the ERS pension board voted to allow pension service credit to persons for time worked at the County in CETA positions. Prior to this vote, no CETA-funded positions were credited as county service time. The pension board decided to grant the credit retroactively for those employees who had already retired.

¶ 6.    In March 2000, Staver learned that the pension board had voted to credit all County employees for the time they worked under CETA. On March 13, 2000, Staver received a check for $18,866.91 for the accumulated retroactive pension increase and was advised that

his future monthly pension payment would increase by $186.09. He was informed that this was due to the granting of 4.16667 years of service as a CETA-funded employee.

¶ 7. On or about March 27, 2000, the County issued Staver a check for $2,185.09, which represented health insurance premiums Staver had paid since the time the pension board decided to credit the CETA service. He was also notified that because of the additional service credit time, he satisfied the fifteen-year service requirement and would now receive free health insurance through the County.

¶ 8. On April 7, 2002, Staver filed a Notice of Claim for Damages for statutory interest upon the retroactive pension payment and for reimbursement, with interest, for the health insurance premiums he had paid to the County. The County denied the claim.

¶ 9. This lawsuit was filed on August 7, 2002, and amended on January 31, 2003. A second amended complaint was filed on November 13, 2003. On or about February 16, 2004, the parties filed cross-motions seeking summary judgment. A hearing on the motions was held on June 1, 2004.

¶ 10. Staver advised the court that he did not have a claim against the ERS, and it was dismissed from the case. The trial court then granted the County's motion seeking summary judgment. Judgment was entered. Staver now appeals.

## DISCUSSION

¶ 11. This case arises from the grant of summary judgment. We review a trial court's decision to grant summary judgment independently, employing the same

681

methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The standards pertinent to our analysis are well known and need not be repeated herein. *See id.* at 314–15. We do value any analysis that the trial court has placed in the record. We shall affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

## A. *Motion to Strike Circuit Court Brief.*

¶ 12.   Staver's first contention is that the trial court erred in failing to strike the County's summary judgment brief filed in the circuit court. He argues that the County failed to provide record references to support its factual assertions and failed to supply sufficient authority for its argument. He also contends that, based on these infirmities, the trial court should have granted summary judgment in his favor. We reject Staver's contention.

¶ 13.   Although it is certainly good practice for parties to provide record references for factual assertions, the County's failure to do so in its summary judgment trial court brief does not result in the remedy Staver seeks. First, there is no trial court briefing statutory equivalent to Wis. Stat. Rule 809.19, which requires appellate briefs to contain record references for factual assertions. Second, a trial court that has presided over a case is generally familiar with the facts presented by the parties, and therefore will know whether the factual assertions are contained within the record. Third, the record in this case demonstrates

that both parties filed motions seeking summary judgment—in essence, conceding by their motions that there are no material issues of disputed fact. Thus, both parties agreed that this case could be decided on the legal issues via summary judgment. Staver cannot now claim that there were disputed facts or incorrect facts because he is unhappy that the trial court granted judgment against, rather than in favor of, him.

¶ 14.   Likewise, a party would be wise to provide the trial court with all the pertinent authority with respect to an issue it advances. Nevertheless, the trial court here, either based on the authority provided by the County or discovered on its own, felt that the law supported judgment against Staver. Thus, we will not reverse the trial court's ruling because Staver contends the County should have provided the trial court with greater legal support for its argument.

*B.   Pension Interest.*

¶ 15.   Staver's next argument is that he is entitled to interest on the lump sum pension benefit the County paid after it determined that the years employees spent at CETA-funded positions should be included in the years of service calculation. His argument is that the 1999 determination by the pension board to include the CETA work years toward the pension credit, and to pay retroactively employees who had already retired, constituted a contract modification. Staver continues that this modification created a benefit to which he was entitled and, because the benefit was not paid at the time he was entitled to the money, he should have

received interest on the lump-sum payment. We cannot agree with Staver's reasoning.

¶ 16.   Staver is correct that, in Wisconsin, interest is allowed to be recovered as an element of damages for breach of contract. *See Klug & Smith Co. v. Sommer*, 83 Wis. 2d 378, 382, 265 N.W.2d 269 (1978); *Laycock v. Parker*, 103 Wis. 161, 181, 79 N.W. 327 (1899). However, there was no breach of contract under the undisputed facts and circumstances presented in this case.

¶ 17.   "Interest is normally awarded where one party has wrongfully retained use of a second party's money." *Sulzer v. Diedrich*, 2002 WI App 278, ¶ 18, 258 Wis. 2d 684, 654 N.W.2d 67, *aff'd as modified and remanded by* 2003 WI 90, 263 Wis. 2d 496, 664 N.W.2d 641. The purpose for awarding interest is to indemnify a claimant for the loss of what the monies due him would presumably have earned if payment had not been delayed. *Kluenker v. State Dep't of Transp.*, 109 Wis. 2d 602, 607, 327 N.W.2d 145 (Ct. App. 1982). Interest can only be recovered on a determinable sum. *California Wine Ass'n v. Wisconsin Liquor Co. of Oshkosh*, 20 Wis. 2d 110, 132, 121 N.W.2d 308 (1963).

¶ 18.   Thus, in order to demonstrate a breach of the contract and a right to interest, Staver must show that he had a legal right to receive the underlying principal payment earlier than he did. He must establish that the monies were due and owing to him at the time he retired. There is simply nothing in the record to establish such propositions.

¶ 19.   Staver was not entitled to the increased benefit until the pension board changed its policy with

regard to employees who worked in CETA-funded positions. Thus, he had no legal right to the increased pension benefit at the time he retired. He, therefore, was not deprived of a sum certain or the use of money improperly withheld. Staver admits in his second amended complaint that the pension board did not have a plain duty to recognize his CETA service as pensionable service credits at the time he retired. Further, he concedes that when the pension board decided to grant the increased pension benefits, it could have done so prospectively. In that case, Staver would not have been entitled to the lump sum retroactive principal payment. Thus, Staver cannot demonstrate that the increased pension payment was "due and owing" at the time he retired up until the time the pension board changed its policy regarding CETA credits. Based on the foregoing, there was no basis for the trial court to award interest on Staver's increased pension payment, and the trial court did not err in granting summary judgment in favor of the County on this issue.[3]

---

[3] Staver also contends that he is entitled to receive interest on the delayed pension payment based on ERISA cases such as *Fotta v. Trustees of United Mine Workers of America*, 165 F.3d 209 (3d Cir. 1998). The factual circumstances in *Fotta* are distinguishable from the factual circumstances in Staver's case. Fotta received a delayed lump-sum disability insurance payment after he successfully established, through litigation, that his disability was work-related. *Id.* at 210–11. In Staver's case, the pension board, on its own, changed the way it interpreted an ordinance, such that it was going to include CETA time in service credits. The pension board's change in interpretation resulted in the lump-sum payment. The pension board's decision to make the lump-sum payment to those employees who had already retired was more akin to a gift than an amount of money that was wrongfully withheld.

¶ 20. There is also some dispute in the briefs as to who would be responsible to pay Staver interest on the pension monies—whether it should come from the County or the ERS. Because we have concluded that no interest is owed, it is not necessary for us to address this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

*C. Health Insurance Premiums/Interest.*

¶ 21. Staver's next argument is that he is entitled to a lump-sum refund of the premiums he paid to the County for health insurance. In addition, he contends he should be awarded interest on that amount. We are not persuaded.

¶ 22. Whether a County retiree is entitled to free health insurance is governed by county ordinance:

> The county shall pay the full monthly cost of providing such coverage to retired members of the county retirement system with fifteen (15) or more years of creditable pension service as a county employe . . . .

MILWAUKEE COUNTY, WIS., ORDINANCE § 17.14(7)(h) (March 1998). Related subsection 17.14(7)(i) states:

> Retired members of the county retirement system with less than fifteen (15) years of creditable pension service credit may, upon retirement, opt to continue their membership in the county group health benefit program upon payment of the monthly cost.

¶ 23. It is undisputed that at the time Staver retired in 1990, he had only 13.8 years of creditable pension service for the purpose of eligibility for health

insurance. Staver, however, points out that the health insurance years of service is based on the creditable pension service as determined by the pension board. He argues, therefore, that when the pension board decided in November 1999 to include CETA years as creditable pension service *and* to make that determination *retroactive,* he, in essence, provided unjust enrichment to the County by paying his health insurance premiums. He also argues that based on the pension board's 1999 decision to include CETA service, he had over fifteen years of creditable pension service and thus was entitled to free health coverage.

¶ 24. The pertinent law controlling an unjust enrichment claim requires proof of three elements: (1) a benefit that has been conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment. *Lawlis v. Thompson,* 137 Wis. 2d 490, 496–97, 405 N.W.2d 317 (1987).

¶ 25. We conclude that a claim for unjust enrichment cannot exist under the undisputed facts and circumstances based on the third element. Staver argues that it would be unfair for the County to retain the sum of health insurance premiums he paid between 1990 and 1999. We disagree. At the time Staver made those payments, he was not entitled to free County-paid health insurance because he did not have fifteen years of service credit. When the pension board voted to change how it interpreted CETA time in November 1999, Staver became eligible for free County-paid health insurance. As soon as it was determined that he qualified for the benefit, it was provided.

¶ 26.  In addition, although the pension board decided to provide retroactive lump-sum pension payments, it is without authority to require the same retroactive lump-sum payouts for health premiums. Staver argues, nevertheless, that because the County determined health insurance based on years of creditable pension service, that when the pension board credited the CETA time *retroactively*, the County, in turn, should have done the same. We cannot agree.

¶ 27.  Both sides agree that the ERS does not have jurisdiction to determine eligibility for health insurance benefits, as that is a matter vested with the County. The reason for this is that the health insurance benefit is not found in any of the ordinances over which the pension board is given authority. Thus, the only constraints on the County in administering this benefit are those constraints found in Chapter 17 of the ordinances. Nothing in that chapter required the County, for purposes of health plan coverage, to give retroactive effect to additional service granted to one who has already retired.

¶ 28.  There is no law or ordinance requiring the County to give retroactive effect to the pension board's changed interpretation of service credit for health plan purposes. The ordinances controlling this issue require that the County provide free health plan coverage to members who retire with sufficient credits. The County complied with these ordinances by giving Staver county-paid health coverage as soon as he was recognized as having sufficient credit. Moreover, although the health coverage determination is based on the pension credit years of service assessment at the time of retirement, there are factors that create differences in the calculation for pension payments verses health insurance. One such factor was present here—military

service credit. Staver was afforded two years credit for his military service for the purposes of calculating his years of service for pension payment. This credit afforded him more than fifteen years for pension payments. However, the County does not include the military service credit for purposes of assessing whether an employee has fifteen years of service for health insurance.

¶ 29. Retroactivity determinations are another factor treated differently. The pension board determined to make a retroactive pension payment based on the change, and the County determined that there was no authority to issue a retroactive health insurance refund based on the change.

¶ 30. Based on the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of the County. There was no basis to order the County to refund the health insurance premiums Staver made prior to the time that the service years credit interpretation was changed which, in turn, made him eligible for free health insurance. Because we have concluded that the County was not required to give a refund to Staver for the health insurance premiums paid, his related issue requesting interest on the refund also must be rejected. If there is no underlying payment due, there can be no interest owed.

*D. Statute of Limitations.*

¶ 31. Staver also argues that his claim is not barred by the statute of limitations. The County responds that, if Staver has a claim, the six-year statute of limitations allows him to recover only for payments of health insurance premiums he made within the six years preceding the commencement of this suit.

¶ 32. Because we have decided that Staver does not have a meritorious claim for the refund of health insurance premiums, it is not necessary for us to address the statute of limitations issue. *See Gross*, 227 Wis. at 300.

*By the Court.*—Judgment affirmed.