Peter LUDYJAN and Rita Ludyjan,
Plaintiffs-Appellants,

v.

CONTINENTAL CASUALTY COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 2007AP38. Submitted on briefs November 29, 2007.*
*—Decided February 13, 2008.*

2008 WI App 41

(Also reported in 747 N.W.2d 745.)

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Joseph E. Owens* of *Arthur & Owens, S.C.*, of New Berlin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Edward A. Hannan* of *Hannan & Associates, LLC*, of Brookfield.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. In this case, two former tenants, Peter and Rita Ludyjan, sued their former landlords, Eugene and Joan Lathers, for unjust enrichment. The tenants demand compensation for two buildings they erected at their own expense during their tenancy, claiming that the buildings added value to the land and it would be unfair to allow the landlords to keep that added value without paying for it. As the trial court recognized, the tenants' claim fails for three reasons. First, unjust enrichment requires that the defendant receive a benefit from the plaintiff. Here, the trial court found that the buildings—a pole barn and a "functionally obsolete" house—did not constitute a benefit to the landlords because they were of no *use* value to them. Second, even if the buildings *had* been a benefit, unjust enrichment further requires that the defendant accept or retain the benefit. Here, the tenants claim that the landlords accepted the buildings by allowing their con-

struction. They fail to mention, though, that the agreement included the understanding that the buildings would be removed if the tenants were to move out. The landlords never accepted permanent structures on their land, and so were under no obligation to pay for them when the tenants unilaterally decided to leave them there. The third failing of the tenants' claim is that they *voluntarily* abandoned the buildings on the landlords' land in the absence of any request, coercion, or mistake. The law calls this the "officious conferring of a benefit" and denies compensation on the sound principle that one cannot thrust property upon another and then go to court demanding to be paid for it.

¶ 2. Most of the necessary facts are taken from the circuit court's written findings, and with one irrelevant exception they go unchallenged by the tenants.[1] From 1971 to 2004, the Ludyjans lived and ran their business on land that they leased from the landlords. During their tenancy, the tenants erected a pole barn and a house (described by the trial court as "functionally obsolete") on the property. The landlords allowed these buildings provided that each would be movable and could be removed by the tenants when the lease expired. The landlords eventually decided to sell the land for development and refused to renew the lease.

¶ 3. In 2003, the tenants sued the landlords, claiming either outright ownership of, or an option to purchase, the land at issue. They later amended the complaint, adding a claim for unjust enrichment. In December 2004, the lease expired and the tenants

---

[1] The one exception is that they disagree with the court's finding that there was no evidence in the record of their cost to construct the buildings. We need not address this issue because the tenants' construction costs have no impact on the outcome of this appeal.

vacated and, realizing that it would cost more to remove the buildings than they were worth, left them where they stood. They claimed in the circuit court, however, that the landlords[2] were unjustly enriched by the value of these two buildings.

¶ 4.    In May 2004, the circuit court granted partial summary judgment to the landlords, dismissing all the tenants' claims to ownership of, or right to purchase, the land, but denied summary judgment on the unjust enrichment claims. The circuit court held a bench trial on the unjust enrichment claims in June 2006. In a thorough written decision, the court made a number of factual findings, including the following:

> 10. At sometime between February 1989 and October 17, 1991, at the request of Plaintiff, Peter Ludyjan, Dr. Lathers granted Peter Ludyjan permission to erect a pole barn on the Lathers land at Ludyjan's expense, provided that the pole barn would be moveable and could be removed by Ludyjan when the lease expired.

> . . . .

> 19. At the request of Plaintiff, Peter Ludyjan, Dr. Lathers granted Peter Ludyjan permission to rebuild a residence on the Lathers land at Ludyjan's expense, provided that the residence would be moveable and could be removed by Ludyjan when the lease expired.

> . . . .

> 21. As rebuilt by the Ludyjans following the 1999 fire, the residence on the Lathers land was rebuilt with a crawl space and a slab-on-grade foundation, without an attached garage as ordinarily required by a Town of Waukesha zoning ordinance, and was functionally ob-

---

[2] The landlords were ultimately replaced in the litigation by their insurer, Continental Casualty Company.

solete as a result of a floor plan requiring users of the residence to go through social areas to travel from any bedroom to the bathroom.

. . . .

28. Excepting a single occasion . . . [the landlords] never intended to use or occupy, and never used or occupied either the residence building or the warehouse pole building on the Lathers land at any time.

29. Dr. Lathers told Peter Ludyjan, and Peter Ludyjan understood that the Ludyjans owned the warehouse pole building and residence, and that the Ludyjans were free to take the warehouse pole building and residence with them when the lease expired on December 31, 2004.

30. Before vacating the Lathers land on December 31, 2004, Plaintiffs determined that the probable cost of removing the residence and warehouse pole building was greater than an amount that a reasonably informed, arms-length buyer would be willing to pay if offered for sale on the open market.

31. When Plaintiffs vacated the Lathers land on December 31, 2004, they intended to leave the warehouse pole building and the residence on the Lathers land.

32. At no time did Eugene G. Lathers, M.D. promise or represent to Plaintiffs that he or the Lathers Family Limited Partnership ever would purchase or pay for the residence building or the warehouse pole barn plaintiffs have erected on the Lathers land since 1999.

33. Plaintiffs' decision to leave the residence building and warehouse pole building in place on the Lathers land when they vacated the demised premises at lease termination on December 31, 2004 was entirely volun-

403

tary on their part, and was not in any way induced or influenced by anything [the landlords] said or did.

¶ 5.    The court also found that the buildings had no "value in use" to the landlords, rejected the tenants' expert testimony as erroneous, and found Eugene Lathers' testimony to be more credible than Peter Ludyjan's. The court concluded that the tenants had knowingly and voluntarily abandoned the buildings when they vacated the land and that the landlords were not unjustly enriched to any degree.

¶ 6.    On appeal, the tenants challenge the court's conclusion that the buildings' "value in use" was the appropriate measure of their value. The proper standard for measuring damages is a question of law, *Hills Bros. Coffee, Inc. v. Dairyland Transp., Inc.*, 157 Wis. 2d 645, 648, 460 N.W.2d 433 (Ct. App. 1990), of which our review is de novo. The tenants also challenge the circuit court's decision not to grant relief for unjust enrichment. Unjust enrichment is an equitable doctrine, and the trial court's decision to grant or deny a remedy is reviewed for erroneous exercise of discretion. *See Ulrich v. Zemke*, 2002 WI App 246, ¶ 8, 258 Wis. 2d 180, 654 N.W.2d 458. Discretionary decisions are sustained if the circuit court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable judge could reach. *Id.*

¶ 7.    The tenants begin their argument by laying out what they claim are the elements of their case. Relying on a comment to Wis JI—Civil 3028, they submit that they must prove three things:    (1) that permanent improvements were made to the owner's land; (2) that the improvements were made with the

404

knowledge and consent of the landowner; and (3) that the improvements add value to the property. This is incorrect. The elements of unjust enrichment, as stated elsewhere in the same jury instructions, as well as in innumerable cases, are (1) a benefit conferred upon the defendant by the plaintiff, (2) knowledge or appreciation of the benefit by the defendant, and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof. Wis JI—Civil 3028; *see, e.g., Staver v. Milwaukee County,* 2006 WI App 33, ¶ 24, 289 Wis. 2d 675, 712 N.W.2d 387. The comment cited by the Ludyjans simply gives an example of a situation in which the elements of unjust enrichment might be found to apply—when permanent improvements that add value are made to an owner's land, with the owner's knowledge and consent. The plaintiff must still initially show all of the general elements of unjust enrichment, as is confirmed by the cases cited in the comment, each of which recites the traditional elements. *See Nelson v. Preston,* 262 Wis. 547, 550, 55 N.W.2d 918 (1952); *Kelley Lumber Co. v. Woelfel,* 1 Wis. 2d 390, 391–92, 83 N.W.2d 872 (1957).

¶ 8.    This is important because the traditional elements tell us that one essential feature of unjust enrichment is a *benefit conferred upon the defendant.* The tenants devote a good deal of their brief to arguing that the buildings that they left on the land had value. They fault the trial court for focusing on the "use value" of the buildings to the landlords, rather than adopting either the "market value" approach or a "cost value" approach on which they submitted evidence and adduced expert testimony. But the theory of unjust enrichment focuses on the unjust gain *to the defendant.*

*See* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION § 3.1, at 280 (2d ed. 1993) ("Damages always begins with the aim of compensation for the plaintiff . . . . Restitution, in contrast, begins with the aim of preventing unjust enrichment to the defendant. To measure damages, courts look at the plaintiff's loss or injury. To measure restitution, courts look at the defendant's gain or benefit."). Thus it was not at all unreasonable for the trial court to ask whether the buildings were useful to the landlords in order to determine whether they ought to pay for them.

■

¶ 9.   And the record supports the court's finding that they were not. In fact, throughout the proceedings the landlords were in the process of selling their land for development. The tenants do not suggest that their pole barn and "functionally obsolete" residence would be of any use to a developer and, in fact, the pole barn was demolished before the land was sold. And, of course, if the buildings affixed to land are not wanted by the buyer, they are not of benefit to the seller.

¶ 10.   This is not to say that a defendant's failure to make use of property will always defeat unjust enrichment. Whether it does depends on the circumstances under which the property is conferred. In describing the measure of restitution, the RESTATEMENT OF RESTITUTION (1937) distinguishes between differing levels of fault on the part of the defendant. For example, a defendant who is unjustly enriched through consciously tortious conduct must pay the value of the property obtained, and "[t]he fact that the subject matter was of little or no worth to the person obtaining it is not material." *Id.* § 151 cmt. b. In contrast, where there is no tortious conduct and a benefit is conferred upon a defendant who is no more at fault than the

plaintiff, recovery is limited by the benefit's "value in advancing the purposes of the recipient" with an exception not relevant here. *Id.* § 155. The circuit court found no blameworthy conduct by the landlords, so it was proper to value the buildings according to their "use value" to them: nothing.

¶ 11. The tenants insist, though, that the buildings had value to the landlords because they could have been rented out before the land was sold. Even assuming this to be true, the tenants' appeal has an even more fundamental problem. The trial court found that the tenants built both of the buildings with the landlords' permission, with the understanding that they would be removed when the tenants vacated. Then the tenants, on their own, decided to leave them there. As we have noted, a defendant's "acceptance or retention" of the benefit conferred by the plaintiff is one of the elements of unjust enrichment. *Staver*, 289 Wis. 2d 675, ¶ 24. The tenants say that the landlords accepted the buildings by agreeing that they could be constructed, but this totally ignores the fact that this agreement was conditioned on the tenants taking the buildings with them when they left. Thus, though the landlords accepted the buildings' temporary existence, they never accepted the buildings *as permanent additions to their land.* We suppose one could say that the landlords "retained" the buildings once the tenants left, at least for a while, but they certainly did not do so under circumstances that made it unjust for them not to pay, as the third element of unjust enrichment requires. *Id.* After all, the tenants had essentially dumped their unwanted buildings on the landlords' land. The landlords were not required to destroy them, or move them at their own expense, to signify that they did not want them.

407

¶ 12. The final hole in the tenants' case is also related to the fact that they left their buildings on the land not because of, but in violation of, their agreement with the landlords. The landlords did not *agree* to the structures staying permanently on their land, much less *request* them. This is exactly the situation the RESTATEMENT OF RESTITUTION § 2 (1937) is describing when it says that "[a] person who officiously confers a benefit upon another is not entitled to restitution therefor." The reasoning behind this proposition is that:

> Policy ordinarily requires that a person who has conferred a benefit . . . by way of . . . adding to the value of his land . . . should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing. A person is not required to deal with another unless he so desires and, ordinarily, a person should not be required to become an obligor unless he so desires.
>
> [W]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The rule denying restitution to officious persons has the effect of penalizing those who thrust benefits upon others and protecting persons who have had benefits thrust upon them.

*Id.* cmt. a; *see also id.* § 112 ("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution . . . ."). Here, after deciding that the buildings were not worth taking with them, the tenants thrust them upon their landlords. They are not entitled to payment for their castoffs.[3]

---

[3] Continental Casualty Company argued that the tenants conferred the buildings officiously in its response brief, and the tenants elected not to file a reply brief. An argument asserted by

¶ 13.   The authorities the tenants cite do not challenge this conclusion. *Pacquette v. Pickness*, 19 Wis. 235, [\*219], 236, [\*219–20] (1865), addressed the measure of value for improvements made by a person who wrongly believed he held title to the land, and not the officious conferring of benefits (the case was governed by the Improvement Act, the modern version of which can be found at WIS. STAT. § 843.09 (2005–06)). *Kerr v. Miller*, 977 P.2d 438, 445 (Or. Ct. App. 1999), describes the expansion of the doctrine of unjust enrichment in Oregon jurisprudence, but does not say that one who confers property voluntarily without mistake, coercion or request has a right to compensation.

¶ 14.   Based upon the circuit court's unchallenged factual findings, the tenants were not entitled to restitution. The court applied the proper law to the facts and made a reasonable determination. Its discretionary decision is affirmed.

*By the Court.*—Judgment affirmed.

---

a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted. *Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶ 1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75.