COURT OF APPEALS
DECISION
DATED AND FILED

February 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1337**

STATE OF WISCONSIN

Cir. Ct. No. 2019SC4792

IN COURT OF APPEALS
DISTRICT IV

---

ZIEGLER LANDSCAPING INC.,

   PLAINTIFF-APPELLANT,

 V.

RPM PROPERTY SERVICE,

   DEFENDANT-RESPONDENT,

TROY A. MACMILLER,

   DEFENDANT.

---

APPEAL from an order of the circuit court for Dane County: PETER C. ANDERSON, Judge. *Affirmed*.

¶1    BLANCHARD, J.[1]  In this small claims case, Ziegler Landscaping, Inc., appeals the circuit court's dismissal of one claim by Ziegler against RPM Property Service.  Ziegler also appeals the court's entry of a $10,000 money judgment against Ziegler on a counterclaim by RPM.  The court entered another, related judgment in the same case that is not appealed:  a $10,000 money judgment in favor of Ziegler against the individual Troy MacMiller.[2]  I affirm the challenged rulings.

*Introduction*

¶2    Ziegler sued RPM, claiming that RPM owed Ziegler money for landscaping work that Ziegler performed at MacMiller's personal residence ("the MacMiller property work").  In seeking to justify suing RPM, Ziegler alleged that, when it performed the MacMiller Property work, Ziegler was "under the impression" that it was working for RPM, not for MacMiller personally, and also that MacMiller "represent[ed] himself as an owner/president/partner of RPM." Ziegler acknowledged that Ziegler had received $15,000 for the MacMiller property work from an RPM business account, leaving a balance due to Ziegler of an additional $7,600 for the work, excluding alleged late fees.  MacMiller was added as a defendant.

¶3    RPM raised a counterclaim that, as pertinent here, should have been reasonably understood to state a theory that Ziegler was unjustly enriched when it received $15,000 from RPM for the MacMiller property work because the $15,000

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Ziegler informs us that it has settled with MacMiller regarding this judgment.

had been given to RPM as an advance payment by an RPM customer for planned landscaping work other than the MacMiller property work, which Ziegler never performed.[3]

¶4      At a trial de novo to the circuit court in June 2020, RPM introduced evidence that MacMiller lacked authority to enter into a contract with Ziegler for the MacMiller property work and that RPM did not enter into any agreement with Ziegler or MacMiller for the MacMiller property work.  At the end of trial, the court dismissed Ziegler's claim against RPM, granted a $10,000 money judgment against MacMiller in favor of Ziegler, and granted a $10,000 money judgment against Ziegler in favor of RPM based on RPM's unjust enrichment counterclaim. Ziegler challenges the circuit court's dismissal of its claim against RPM for payment and raises two challenges to entry of the $10,000 judgment against Ziegler on RPM's counterclaim.

¶5      Regarding dismissal of the Ziegler claim for payment, Ziegler makes an argument related to MacMiller's role in arranging for the MacMiller property work, in particular the issue of whether MacMiller had authority to contractually bind RPM on the MacMiller property work through MacMiller's interactions with Ziegler.  Ziegler argues that "[t]he court erred when it applied the legal princip[le] of apparent authority to MacMiller's putative ownership of RPM to the facts of this case."

---

[3] In small claims cases, all pleadings except the initial complaint may be oral, and therefore the counterclaim here could have been made, supplemented, or amended by oral statements.  *See* WIS. STAT. § 799.06(1); *see also* **County of Portage v. Steinpreis**, 104 Wis. 2d 466, 479-80, 312 N.W.2d 731 (1981) (small claims procedures are informal and intended to foster the speedy and inexpensive resolution of disputes); **Columbia Cnty. v. Bylewski**, 94 Wis. 2d 153, 165, 288 N.W.2d 129 (1980) ("small claims procedure should be as summary as possible").

¶6      Regarding RPM's counterclaim of unjust enrichment, Ziegler argues that the circuit court erroneously exercised its discretion by recognizing the counterclaim and that, even if the court could recognize the counterclaim, there was insufficient evidence to support it.

*Additional Background*

¶7      MacMiller asked Zeigler to perform extensive landscaping at his residence in 2018 and Zeigler completed this MacMiller property work.  There was never a written bid, estimate, or contract for the MacMiller property work.

¶8      MacMiller then proposed to Zeigler that it act as a subcontractor for RPM on a different landscaping project, this time for RPM customers who I refer to collectively as A.B.[4]  RPM entered into a written bid or contract for the A.B. property work, and A.B. gave RPM an advance payment in the form of a $15,000 check dated July 20, 2018.

¶9      After this, however, MacMiller told Zeigler that Ziegler had not acted quickly enough on the A.B. property work, that someone else would landscape A.B.'s property, and that the $15,000 from A.B. should be applied to the cost of the MacMiller property work.  Consistent with that direction from MacMiller, the office manager for Zeigler applied the $15,000 advance from A.B. against the $36,000 total price of the MacMiller property work.  In addition, the Zeigler office manager applied approximately $13,400 in purported "barter jobs"

---

[4] I use a single set of fictitious initials to represent these RPM customers, who are not parties to this action.

that RPM had allegedly performed on behalf of Ziegler against the cost of the MacMiller property work.

¶10    When Ziegler was unsuccessful in collecting from MacMiller what Ziegler viewed as the $7,600 it was still owed for the MacMiller property work, it brought this small claims action against RPM. Attached to the initial complaint was a June 2018 Ziegler invoice to RPM purporting to reflect $22,600 owed, with the purported "credit" of $15,000, for a purported balance due of $7,600, excluding alleged late fees.

¶11    RPM's responses to the court included a letter and attachments from Bukurim Rushiti, who referred to RPM as "my business," and there is no dispute that Rushiti was at all pertinent times an owner of RPM. Rushiti took the position that the MacMiller property work was based on an agreement strictly between MacMiller and Ziegler, not between RPM and Ziegler. Rushiti further alleged that Ziegler had represented that MacMiller improperly told Ziegler that Ziegler should "keep" the $15,000 advance payment from A.B. as payment for the unrelated MacMiller property work.

¶12    MacMiller submitted a letter to the court before trial alleging in pertinent part that MacMiller "had full control to enter into contracts and agreements on behalf of RPM" at the time of the MacMiller property work, and that Ziegler performed that work under an agreement "between RPM and Ziegler, not [between RPM and MacMiller] personally." MacMiller further opined that RPM benefited from advertising and social media featuring the MacMiller property work.

¶13    Another of Ziegler's pretrial submissions stated that the issues for trial would be:  whether MacMiller had apparent authority to enter into contracts

on behalf of RPM, such as the one with Ziegler for the MacMiller property work; what money may be owed to Ziegler and who must pay any money owed; and whether Ziegler is obligated to turn over to RPM the $15,000 that A.B. advanced for the A.B. property work never performed by Ziegler and that RPM credited against Ziegler's invoice for the MacMiller property work.

¶14 Also in advance of trial, on behalf of RPM, Rushiti contended that MacMiller's pretrial representations to the court were not truthful. Further, Rushiti continued in his position that any amount owed to Ziegler for the MacMiller property work was the personal obligation of MacMiller and that Ziegler should be ordered to return to RPM the $15,000 advanced by A.B. for the separate work that Ziegler never performed.

¶15 Pertinent trial evidence included the following. MacMiller testified in part that he was authorized to contract with Ziegler on behalf of RPM for the MacMiller property work. Rushiti testified in part that MacMiller did not have authority to enter into contracts on behalf of RPM and that RPM did not contract to have Ziegler extensively landscape MacMiller's property. Rushiti also testified that he terminated MacMiller's employment with RPM in December 2019.

¶16 At the close of trial, the court made findings and determinations that included the following. MacMiller was "quite dishonest"; he "would say anything any time if it was in his self-interest." MacMiller "had neither actual nor apparent authority to bind RPM" for any obligation on the MacMiller property work. Rushiti's testimony was credible. Ziegler did not always keep contemporaneous records of pertinent events and Ziegler employees, while they acted honestly, should have "realiz[ed]" that it was "unusual" for MacMiller to act as he did regarding the extensive landscaping of his personal property and for RPM to credit

6

Ziegler with $15,000 from a customer unrelated to the MacMiller property work. In other words, it was MacMiller's decision to divert the $15,000 to Ziegler, at a loss to RPM, but Ziegler should have realized that this was not proper. The court also placed great weight on the scarcity of pertinent written agreements either between Zeigler and RPM or between MacMiller and RPM, noting that purported oral agreements in this case did not constitute "great evidence."

*Dismissal Of Ziegler Claim Against RPM For Payment;*
*MacMiller's Apparent Authority*

¶17    Ziegler argues that the circuit court "erred when it applied the legal princip[le] of apparent authority to MacMiller's putative ownership of RPM to the facts of the case." This is a challenge to the circuit court's determination that MacMiller "had neither actual nor apparent authority to bind RPM" for any obligation on the MacMiller property work, which was a basis to dismiss Ziegler's claim against RPM.

¶18    Ziegler opens this argument in a confusing way. It criticizes the manner in which the court presided over the trial, but without providing support for reversal. It also suggests that findings of fact by the court were clearly erroneous—as for example by asserting that the "circuit court disregarded much of the evidence presented"—but without attempting to develop an argument that the circuit court clearly erred in finding any fact. In any case, taking into account Ziegler's arguments as a whole on this issue, it is apparent that it means to argue that the court applied incorrect legal standards to the authority issue based on the facts as found by the circuit court. Ziegler correctly states that this presents a legal issue that is reviewed de novo on appeal. *See **Mared Indus., Inc. v. Mansfield**,* 2005 WI 5, ¶¶9, 22-28, 277 Wis. 2d 350, 690 N.W.2d 835 (addressing issue of apparent authority or actual authority as a matter of law subject to de novo

review).  I now address Ziegler's specific arguments on the MacMiller-authority issue as best I understand them.

¶19    Ziegler may intend to argue that the circuit court failed to consider the possibility that Rushiti "manifested his intention to imbue MacMiller" with explicit authority on behalf of RPM to take such steps as binding RPM to a contract with Ziegler to perform the MacMiller property work.  If intended as an argument, it has no merit.  The record reflects that the circuit court considered and rejected this possibility.

¶20    Ziegler argues that the trial evidence "unequivocally establishes implied authority," and therefore the circuit court must have erred in determining that the doctrine of implied authority does not apply here.[5]  Our supreme court has adopted the following legal standards:

> "Actual authority is express when found within the explicit agency agreement itself, that is, the communication or contract between the principal and the agent.  Actual authority is implied when the agent, not the third party, reasonably believes he or she has authority as a result of the action of the principal.  An agent has the implied authority to do such acts as are usual, appropriate, necessary or proper to accomplish the purpose and objects of the agency."

*Id.*, ¶31 (quoting *Skrupky v. Elbert*, 189 Wis. 2d 31, 44, 526 N.W.2d 264 (Ct. App. 1994)).

---

[5] RPM contends that Ziegler forfeited a specific implied authority argument by failing to raise it in the circuit court, but I decline to apply forfeiture under the circumstances.  *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 ("The forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case.").

¶21     Ziegler argues that the circuit court was obligated to determine that MacMiller had implied authority to bind RPM to pay for expensive landscaping for his personal residence because MacMiller reasonably believed himself to have such authority, based on his having taken such actions as referring to himself as the RPM president in an email. In making this implied authority argument, Ziegler completely ignores the credibility finding of the court that MacMiller was "quite dishonest" and that his representations tended not to rest on reasonable beliefs. More generally, Ziegler fails to recognize that it faces an uphill battle in making the argument that the court was required to determine that MacMiller had implied authority, given the findings about the credibility of MacMiller (agent) and Rushiti (representative of principal). MacMiller had an obvious interest in exaggerating or lying about facts that might tend to put RPM on the hook for the cost of the MacMiller property work and take himself off the hook. Further, the court found that Ziegler was aware, following the direction of the "quite dishonest" MacMiller, that it was cashing a check from A.B. for a different project, for use as payment for extensive work on MacMiller's personal property.[6]

¶22     I turn to Rushiti's testimony. As summarized in RPM's brief, and not effectively rebutted in Ziegler's reply brief, Rushiti gave extensive testimony sufficient to support a finding that MacMiller could not have not "reasonably believe[d]" that he had authority to bind RPM at pertinent times. It is true that there was also evidence that raised reasonable inferences cutting in the other direction, as the circuit court acknowledged in explaining its rulings. For

---

[6] To clarify, the circuit court determined that Ziegler did not collude with MacMiller in depriving RPM of its customer's funds. However, as summarized above in the text, the court concluded that Ziegler should have suspected misconduct by MacMiller.

example, the circuit court found that, through a course of conduct that included interactions with Ziegler, MacMiller had "general agency," but not the particular principal-agent relationship with RPM related to the expensive landscaping of MacMiller's personal property. I interpret the court to have operated from the premise that an agency relationship can take different forms, such that an individual can be an agent of a principal for some purposes but not for others, and also operated from the related premise that it is the context of the dispute that indicates how an agency relationship is analyzed. There is a sound basis to make these distinctions and Ziegler does not present a clear argument to the contrary.[7]

---

[7] The Restatement of Agency provides the following explanation:

> Courts have long distinguished between "general agents" and "special agents," a distinction that rests on both the objects of the discretion granted an agent and the mode of regulating the agent's exercise of discretion. The labels matter less than the underlying circumstances that warrant their application. The prototypical special agent is a real-estate broker who is authorized to conduct a single transaction. A special agent may also be authorized to conduct a series of transactions specified by the principal. The prototypical general agent is a manager of a business, who has authority to conduct a series of transactions and who serves the principal on an ongoing as opposed to an episodic basis. The transaction-by-transaction nature of a principal's relationship with a special agent may limit the principal's potential benefit from associating with the agent while also limiting the principal's risks. Both special and general agents have discretion, but special agents exercise it within compasses more specifically identified by the principal. A special agent may, of course, exercise considerable discretion as, for example, would an art dealer retained by a connoisseur as a special agent to buy on the connoisseur's account a painting to be chosen by the special agent. A principal may provide instructions to general as well as to special agents that further delimit their actual authority by restricting the discretion the agent would otherwise possess.

RESTATEMENT (THIRD) OF AGENCY § 2.01 cmt. d; *see also* § 1.01 cmt. h ("[D]espite the narrowness of its scope, an agency relation imposes legal consequences when the agent's acts are within its scope."); *see also* **Mared Indus., Inc. v. Mansfield**, 2005 WI 5, ¶31, 277 Wis. 2d 350, 690 N.W.2d 835 ("'An agent has the implied authority to do such acts as are *usual, appropriate,*

(continued)

In any case, more generally, Ziegler fails to point to an erroneous application of a legal standard regarding implied authority.

¶23    The court explained that it was primarily influenced by three factors. First, the MacMiller property work

> was being done on [MacMiller's] personal home but being charged to his employer[, RPM]. That would raise a few eyebrows in a lot of people's minds. That doesn't seem right. How does that happen? Why not [have MacMiller] pay it? He could say, Well, I'm authorized to do it, but why believe him? What's the justification in believing him?

Second, "this is a $30,000 job…. It's not in writing. That seems a little bit unusual. It might even violate the statute of frauds." Third, Ziegler received a check on July 19, 2018, for the $15,000 advance for the A.B. property work, then promptly applied that money to the MacMiller property work. "Mr. MacMiller calls up [Ziegler] and say[s] apply that to my case, to my property." "It's not the right property on the re: line. What kind of agent has that authority to change the re: line?"

¶24    Ziegler also argues that the circuit court was obligated to apply the doctrine of apparent agency here. Under this doctrine, a principal (here, RPM) may be held liable for the conduct of an agent (MacMiller) involving a third party (Ziegler), even if the principal has not authorized the agent's authority either explicitly or implicitly, if the principal manifests to the third party that it consents to the agent's conduct. *Hansche v. A. J. Conroy, Inc.*, 222 Wis. 553, 560, 269 N.W. 309 (1936) (describing the three elements as (1) acts by the agent or

*necessary or proper* to accomplish the purpose and objects of the agency.'" (emphasis added and quoted source omitted)).

11

principal justifying belief in the agency; (2) knowledge thereof of the party sought to be held; and (3) reliance thereon consistent with ordinary care and prudence). "[A]pparent agency and authority cannot rest solely upon the statements made to third parties by the agent but are dependent upon the principal's manifestation of consent." *Vandervest v. Kauffman Pizza, Inc.*, 60 Wis. 2d 230, 245 & n.10, 208 N.W.2d 428 (1973) (citing *Hansche*, 222 Wis. 553).

¶25     As with Ziegler's implied authority argument, its apparent authority argument rests on evidence favorable to it and fails to take into account evidence supporting contrary inferences that the circuit court was free to consider.  It is again notable that Ziegler essentially ignores the key facts that the court found Rushiti to be credible and that Rushiti's testimony included the following:  he was RPM's sole owner; MacMiller did not have authority to obligate RPM on contracts for MacMiller's personal benefit; RPM did not enter into any agreement with Ziegler or MacMiller to substantially landscape MacMiller's residential property; and Rushiti became aware of Ziegler's claim in this case only after Ziegler sued RPM in July 2019.

¶26     The following is an illustrative example of the importance of Rushiti's testimony.  Rushiti testified about an email, on which Ziegler now relies, in which MacMiller held himself out (falsely according to Rushiti) as the president of RPM to a person or persons other than Ziegler or Rushiti.  Rushiti testified that he did not see the email until trial, and that he had never seen any email in which Ziegler made the false assertion that he was the president of RPM.  Ziegler does not point to trial evidence that Ziegler was aware of this particular email during the pertinent time period, and that fact, along with the testimony from Rushiti, goes a long way in neutralizing its potential significance.

¶27    In sum, Ziegler fails to demonstrate legal error by the circuit court in dismissing Ziegler's claim based on a misunderstanding or misapplication of any legal doctrine bearing on MacMiller's purported authority to act on behalf of RPM as opposed to on his own behalf.[8]

*RPM's Counterclaim Against Ziegler For Unjust Enrichment*

¶28    Ziegler argues that the circuit court erroneously exercised its discretion by recognizing RPM's unjust enrichment counterclaim, because Ziegler missed a court-ordered deadline to make a counterclaim and did not raise the counterclaim in a sufficiently timely fashion. In the alternative, Ziegler argues that, even if the counterclaim could be recognized, there was insufficient evidence to support the counterclaim.

¶29    Before turning to Ziegler's first counterclaim argument, I briefly clarify one point. The circuit court explained that the $10,000 judgment against Zeigler would have been in the amount of $15,000 (the amount advanced for the A.B. property work never performed by Ziegler and that RPM credited against Ziegler's invoice for the MacMiller property work), but small claims judgments are currently capped at $10,000. *See* WIS. STAT. § 799.01(1)(d). Indeed, when the court determined that RPM could proceed with its counterclaim, the court noted that recovery would have to be limited to a maximum of $10,000 for this reason.

---

[8] Ziegler asserts that "the circuit court did not consult Wisconsin law," apparently based on the fact that the court referenced and read out loud from a Wikipedia definition of "apparent authority." If Ziegler means to suggest that reversal is necessary because the court referenced a definition from an online encyclopedia, it fails to develop an argument to that effect. The issue here is whether the court erroneously applied the correct legal standards. The court's reference to this source of information does not in itself show an application of incorrect standards.

¶30    I reject Ziegler's first counterclaim argument on the ground that it rests on a false premise.[9]  The false premise is that Zeigler was not on notice until the first day of trial that RPM was claiming that Zeigler should be required to repay to RPM the $15,000 that was advanced by A.B. but was misapplied to the MacMiller property work.  It is not true that Ziegler was "blindsided" at trial by the substance of RPM's counterclaim as Ziegler contends.

¶31    I cannot reconcile multiple aspects of the record with Ziegler's argument based on surprise and lack of notice, and I now identify three of these aspects.  First, contrary to Ziegler's contention, the fact that the circuit court asked counsel for RPM to clarify elements of the counterclaim does not mean that the court was surprised at the existence of a counterclaim, and the record of the court's comments do not on their face suggest surprise.  Second, as the summaries above reveal, Rushiti specifically alleged in advance of trial that Ziegler had represented that MacMiller improperly told Ziegler that Ziegler would get to "keep" the $15,000 advance payment from A.B. as payment for the unrelated MacMiller property work.  Third, in advance of trial Ziegler *itself* submitted to the court that the issues for trial would include whether Ziegler would be obligated to turn over to RPM the $15,000 advanced by A.B. for the A.B. property work.

¶32    After RPM makes similar points in its brief, I do not understand what comes back in Ziegler's reply.  Ziegler states that RPM's pretrial claim for $15,000 was "predicated on the belief that the payment Ziegler received was for work on the [A.B.] project and not payment for" the MacMiller property work,

---

[9]  RPM contends that Ziegler forfeited this argument by failing to preserve it in the circuit court, but I decline to resolve this issue on that basis given the circumstances. *See Counihan*, 390 Wis. 2d 172, ¶27.

which was "a belief necessarily requiring resolution of" the apparent authority argument addressed above. Ziegler may intend to make some form of estoppel argument. But even when I try to see this through a theoretical estoppel-based lens, the potential pieces of the puzzle are not evident. Further, in any case, this argument does not rebut RPM's position that it timely and appropriately raised its counterclaim. Because I am unable to discern a meaningful reply by Zeigler to RPM's argument, I deem the argument conceded. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to reply to an argument made in a response brief can be taken as a concession).[10]

¶33    To the extent that Ziegler may mean to suggest that the circuit court erroneously exercised its discretion by addressing the counterclaim because RPM did not formally denominate it as a counterclaim for unjust enrichment before trial, I would reject that argument. *See* WIS. STAT. § 802.09(1) (leave to amend pleadings shall be "freely given at any stage of the action when justice so requires"); WIS. STAT. § 799.04(1) ("Except as otherwise provided in this chapter, the general rules of practice and procedure in chs. ... 801 to 847 shall apply to actions and proceedings under this chapter.").

¶34    It is important to recognize that, even beyond the fact that this is a small claims case with the attendant lack of need for formality, our supreme court has explained the following:

---

[10] In addition, Ziegler provides no support for its assertion that it was prejudiced by the timing of RPM's presentation of its counterclaim argument. It makes generic references to the purported need for "discovery," "research," and preparation but fails to describe a concrete manner in which it was prejudiced.

> As a notice pleading state, Wisconsin … requires only that a complaint "set forth the basic facts giving rise to the claims." *Apple Hill Farms Dev., LLP v. Price*, 2012 WI App 69, ¶17, 342 Wis. 2d 162, 816 N.W.2d 914 (citing [WIS. STAT.] § 802.02(1)(a)). The purpose of a complaint in a notice pleading jurisdiction is to provide "sufficient detail" such "that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery." *Midway Motor Lodge of Brookfield v. Hartford Ins. Grp.*, 226 Wis. 2d 23, 35, 593 N.W.2d 852 (Ct. App. 1999) (internal quotation marks and citation omitted).

*United Concrete & Constr., Inc. v. Red–D–Mix Concrete, Inc.*, 2013 WI 72, ¶21, 349 Wis. 2d 587, 836 N.W.2d 807. Applying these standards, Ziegler fails to provide a developed and record-supported argument that Ziegler should not have had "a fair idea of what" RPM was "complaining" in its counterclaim—regarding a benefit conferred on Ziegler, with its knowledge, that Ziegler inequitably retained—or that Ziegler could not "see that there [was] some basis for recovery." *See Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 904 N.W.2d 789 (stating elements of unjust enrichment).

¶35 Turning to Ziegler's second argument challenging the counterclaim judgment, Ziegler discusses RPM's theory based on theft by contractor, but I need not address that theory of the counterclaim because RPM has abandoned it. This leaves Ziegler's brief argument, which amounts to little more than bald assertion, that RPM "cannot claim unjust enrichment against Ziegler."

¶36 Here again, Zeigler offers an argument that references evidence solely supporting its position and fails to properly account for pertinent findings of the circuit court. Also critical, Zeigler completely ignores the proper standard of review in the course of addressing this issue. *See Ludyjan v. Continental Cas. Co.*, 2008 WI App 41, ¶6, 308 Wis. 2d 398, 747 N.W.2d 745 ("Unjust enrichment is an equitable doctrine, and the trial court's decision to grant or deny a remedy is

reviewed for erroneous exercise of discretion."). "Discretionary decisions are sustained if the circuit court examined the relevant facts, applied a proper standard of law, and using a rational process, reached a conclusion that a reasonable judge could reach." *Id.* It is not enough for Ziegler to cite, as it does, the correct standard of review; a winning argument has to be based on an *application* of the correct standard to the pertinent facts. Beyond all that, after RPM essentially makes these points, Zeigler fails to reply, conceding them. *See United Coop.*, 304 Wis. 2d 750, ¶39.

¶37 At the close of its reply brief Ziegler briefly asserts the following proposition. It was contrary to "the interests of justice" for the circuit court to determine both that RPM could "receive the benefit from MacMiller's actions as an agent of RPM," and also that RPM is "absolved of the liability from [MacMiller's] actions." If Ziegler has a standalone argument to make that the judgment on the counterclaim against Ziegler cannot be reconciled in the interests of justice with dismissal of Ziegler's claim, it fails to develop that argument in a coherent fashion that is supported by legal authority.

¶38 Stepping back and considering the interests of justice broadly, I note that the circuit court ordered MacMiller to pay $10,000 to Ziegler. Beyond that, there are many indicia in the record of this protracted small claims litigation that the circuit court tried to achieve justice in a neutral manner, based on the evidence presented by the parties, the pertinent legal standards, and the specific arguments made by the parties at the times they made the arguments.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.